## Columbia Gas Transmission Corp.
### v.
## Bennett
*[Cite as 8 AOA 25]*

*Case No. 12039*
*Montgomery County, (2nd)*
*Decided December 17, 1990*

*A. Mark Segreti, Bieser, Greer & Landis, 400 Gem Plaza, Third & Main Streets, Dayton, Ohio, 45402, for Plaintiff-Appellee/Cross-Appellant.*

*Michael R. Turner & Janet K. Cooper, Pickrel, Schaeffer & Ebeling, Co., 2700 Kettering Tower, Dayton, Ohio 45423, for Defendant-Appellant/Cross-Appellee.*

GRADY, J.

Defendants-Appellants Robert M. Bennett, et al., appeal the trial court's decision finding that the Bennetts' title to real property was encumbered by an easement for a high pressure natural gas transmission line owned and operated by Plaintiff-Appellee Columbia Gas Transmission Corp., and permanently enjoining the Bennetts from building a structure within the easement boundaries. The trial court found that, notwithstanding an erroneous Section designation in the instrument granting Columbia Gas an easement through their property, the Bennetts had constructive notice of the encumbrance. However, the trial court then permitted the Bennetts to partially encroach on the easement to construct a garage. Columbia Gas challenges this aspect of the trial court's judgment in its cross-appeal.

In their appeal, the Bennetts present three issues for our consideration. First, did the trial court err in finding that the instrument granting the easement was within the Bennetts' chain of title when the instrument contained an erroneous

Section designation? Second, did the trial court err in charging the Bennetts with constructive notice? Third, did the trial court err in defining the scope of the easement absent a specific designation in the conveying instrument?

In its cross-appeal, Columbia Gas presents a single issue for our consideration. When a trial court defines the scope of an easement, may it then permit the servient estate owner to encroach on the easement in a manner that interferes with the dominate estate owner's reasonable enjoyment of his easement?

For the reasons stated below, we conclude the trial court erred in finding the easement was within the Bennetts' chain of title. The manifest weight of the evidence clearly indicates that the granting instrument was recorded outside the chain of title due to the instrument's erroneous identification of the property burdened by the easement. Consequently, the Bennetts cannot be charged with constructive notice of the easement. The easement is, therefore, unenforceable against the Bennetts.

We also conclude that the scope of the easement defined by the trial court was supported by the weight of the evidence. However, we conclude that the trial court abused its discretion in permitting the Bennetts to partially encroach on the easement to construct a garage.

The injunction granted by the trial court in favor of Columbia Gas will be vacated.

I.
*Factual Posture*

Defendants-Appellants Robert and Pamela Bennett are owners of a single family residence at 101 Ironwood Drive, West Carrollton, Ohio. This parcel corresponds to consecutive lot number 886 in the Orchard Hills Estates and was located in Section 20, Town 1, Range 6, before platting of the subdivision (Tr. 150, 151). A sixteen inch high pressure natural gas transmission line (A-77) owned and operated by Columbia Gas runs along the western boundary of the property.

On June 29, 1950, Orville M. Southard, the developer of Orchard Hill Estates, conveyed to Ohio Fuel Gas Company an easement to build and maintain a natural gas transmission line through the subdivision. Columbia Gas is the successor in interest. The easement deed gave Ohio Fuel Gas Company the right to "lay a pipe line over and through the premises *** and to maintain, operate, repair and remove same *** on lands in *** Section 21, 22, 1 Miami 6 Township Montgomery County *** " The deed described the easement as bounded on the north

by Oxford Miami Paper Co., and Grimes Road, on the east by Elm Street, on the south by Raymond and Edna Recher and Carl N. Bogan, and on the west by Harry W. Lautenschlager and Oxford Miami Paper Co. The deed contained a restriction that the transmission line may "not interfer (sic) with the residence building site on any lot." No other descriptions or restrictions were contained in the deed.

The Bennetts purchased lot 886 from Robert and Doris Robbins on September 29, 1987. Richard Bennett testified that Robbins informed him "that a pipeline did exist in the area. It ran underneath Mr. Skelding's driveway and underneath his garage and was in no way near my property at all." (Tr. 117). A title search prepared for the sale indicated no easements for a gas transmission line through lot 886 (Tr. 113, 114), although the plat map did depict a "gas line" running along the west side of the property. The map contained no indication of any easements, however.

On July 27, 1988, Richard Bennett began excavating the property with a bulldozer to construct an unattached garage on the west side of the property. As proposed, the garage came within seven and one-half feet of the pipe line (Tr. 21, 62). An employee of Columbia Gas, alerted to Bennett's activities, stopped and asked that he cease excavating (Tr. 115). Bennett was informed that he was "within inches or feet of a pipeline." (Tr. 115). Columbia Gas then placed several orange-white markers along the west property line to indicate the path of the transmission line. Columbia Gas also placed white markers at varying distances from the pipeline to mark its purported easement (Tr. 118, 119).

On July 28, 1988, supervisors from Columbia Gas visited Bennett and again demanded that he stop excavating and replace the soil to protect the pipe. On July 29, 1988, personnel from Columbia Gas again met with Bennett and gave him guidelines for constructing near a gas transmission line. The employees also presented Bennett with a document they claimed established a twenty-five foot easement along the west side of his property.

On October 17, 1988, Columbia Gas filed a motion for a preliminary injunction and a verified complaint for injunctive relief which sought to enjoin Bennett from constructing any structure within its purported twenty-five foot easement. Pursuant to Civ. R. 65(B) (2), the trial court consolidated a hearing on the preliminary injunc-

tion with a trial on the merits. A trial was held on October 24, 1988.

At trial several witnesses testified about the existence and scope of the easement. Bennett testified that the title report prepared at the time he purchased the property showed no easements for a gas transmission line. He also stated that he observed only one orange-white marker near his home and that was across the street (Tr. 129). Bennett stated that he observed no other markers in the area.

Vicki Pegg, Montgomery County Recorder, testified that documents received by the recorder's office are indexed according to the type of transaction and location of real 91 estate (Tr. 147). Pegg stated that if the deed describes a parcel by section, town and range, it would be indexed according to that description and retrieved by using that description. Pegg further testified that the easement deed here "*** would go into the deed index. It would be indexed from Orville Southard to the Ohio Fuel Gas Co., and it would be placed in the tract index *** under sections 21 and 22." (Tr. 149). Pegg stated that in locating a deed, "You would look into the deed index for an alphabetical listing of the parties involved. You would look in the tract index under those section numbers and the town and range numbers." (Tr. 150). Finally, Pegg stated that this deed would not have been indexed under section 20.

Dana Debaets, an employee of Columbia Gas, testified that the pipeline was installed in 1951 and had a maximum load of 500 pounds of pressure (Tr. 34). Debaets further testified that federal regulations required twenty-four to thirty-six inches of soil cover to protect the pipe (Tr. 40). Finally, Debaets described the process of repairing a gas transmission line, the dangers of migrating gas, and the need for a twenty-five foot easement to safely and efficiently make repairs to the line.

Shortly after the trial, the Bennetts filed an answer to the verified complaint and a three-branch counterclaim seeking $1,000,000 in compensatory damages and a permanent injunction enjoining Columbia Gas from trespassing upon their land and operating the pipeline. Bennett requested a jury trial on the damages claim.

On February 3, 1989, the trial court granted Columbia Gas a preliminary injunction and a twenty-five foot easement. The court concluded that, on the authority of *Roebuck v. Columbia Gas Transm. Corp.* (1977), 57 Ohio App.2d 217, the erroneous description in the 1950 Southard-

Ohio Fuel Gas Company deed was sufficient to give constructive notice of the easement through lot 886. However, the trial court ordered Columbia Gas to permit Bennett to encroach on the easement to within fifteen feet of the pipeline to excavate eight inches of top soil and construct an asphalt driveway four inches thick. The trial court further stated that the Bennetts could construct a garage "at a point within the 25 foot easement *** to be determined later by this Court ***"

On September 18, 1989, the trial court reiterated its earlier findings and granted Columbia Gas a permanent injunction. Again the trial court ordered Columbia Gas to permit Bennett to encroach on the easement to construct a new garage. The court held that the garage could be no closer than seventeen feet from the center of the pipeline and the structure no longer than thirty feet.

· The Bennetts filed a timely notice of appeal and Columbia Gas a cross-appeal. We dismissed the appeals on December 27th finding that the September 18th decision was not a final appealable order as the Bennetts' damages claim remained unresolved.

On January 8, 1990, the trial court ruled there was no just reason for delay in appealing the September 18th decision. Bennett filed a second notice of appeal on January 23, 1990 and Columbia Gas filed a cross-appeal shortly thereafter. We asserted jurisdiction over the issue of injunctive relief on April 23, 1990.

## II.
### Court of Appeals Jurisdiction

As a preliminary matter, Columbia Gas contends that we are without jurisdiction to entertain this appeal because the trial court's September 18th decision is not final and appealable as the Bennetts' damage claim is unresolved and, alternatively, the Bennetts' did not file a timely notice of appeal. We disagree with this contention.

Civ. R. 54(B) states, in part:

"When more than one claim for relief is presented in an action *** the court may enter final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision *** which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties ***"* (Emphasis added)

On January 8, 1990, the trial court expressly determined there was "no just reason for delay" in appealing the September 18th decision granting Columbia Gas a permanent injunction. That determination fully settled the issue of injunctive relief and converted the September 18th decision granting Columbia Gas a permanent injunction into a final appealable order. The Bennetts filed a timely notice of appeal therefrom on January 23, 1990.

We conclude that this court has jurisdiction to review the findings of the trial court that an easement exists in favor of Columbia Gas and the order of the trial court permanently enjoining the Bennetts from invading the easement except on the terms provided. Because the counterclaim and request for injunctive relief made by the Bennetts remain pending before the trial court, we do not reach those matters in this opinion.

### III.

*The Bennett's First and Second Assignments of Error*

The Bennetts' first two assignments of error present intertwining questions. We will, therefore, consider them together.

The Bennetts state as their assignments of error:

"I. THE TRIAL COURT ERRED IN FINDING THAT THE 1950 RECORDED EASEMENT WAS WITHIN THE APPELLANT'S CHAIN OF TITLE.

"II. THE TRIAL COURT ERRED IN FINDING THAT THE DEFECTIVE DESCRIPTION OF THE 1950 RECORDED EASEMENT WAS SUFFICIENT TO PROVIDE APPELLANTS, AS SUBSEQUENT BONA FIDE PURCHASERS FOR VALUE, WITH CONSTRUCTIVE NOTICE OF THE ALLEGED EASEMENT ON APPELLANTS' PROPERTY."

We note at the outset that our review of this matter is strictly limited. To establish reversible error, the moving party must demonstrate either that the trial court abused its discretion or that its judgment is against the manifest weight of the evidence. Abuse of discretion arises when the trial court's attitude is demonstrably "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217, 219. Moreover, a lower court's judgment will not be disturbed as against the weight of the evidence so long as it is supported by some competent, credible evidence. See, *Seasons Coal Co. v. Cleve-land* (1984), 10 Ohio St. 3d 77, 80; *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279; *Bank of Buffalo v. Wendel* (1919), 100 Ohio St. 47; *Huffman v. Huffman* (June 23, 1989), Greene App. No. 88-CA-101, unreported.

Ohio has long abided by the principle that a purchaser of real property is charged with constructive notice of all prior conveyances recorded in his chain of title. See, *Tiller v. Hinton* (1985), 19 Ohio St.3d 66, 68; *Spring Lake v. O.F.M. Co.* (1984), 12 Ohio St. 3d 333, 338 (Holmes, J., concurring); *Building & Loan Co. v. Yarborough* (1967), 11 Ohio St.2d 195; *Hibbs v. Insurance Co.* (1884), 40 Ohio St. 543; *Baker v. Koch* (1960), 114 Ohio App. 519. Constructive notice is imputed notice which exists by reason of the proper filing of a conveying instrument. See, *In re Fahle's Estate* (1950), 90 Ohio App. 195; *Valley City Mortgage & Loan Co. v. Nelson* (C.A. 1924), 2 Ohio Law Abs. 554; 6A Powell on Real Property (1990) 82-41, Section 905[1][d]ii. A purchaser of real property is obligated to exercise due diligence and thoroughly examine the chain of title to discover the existence of adverse claims or encumbrances. Cf., *Kiley v. Hall* (1917), 96 Ohio St. 374; *Smith v. Volk* (1948), 85 Ohio App. 347. See, also, 80 Ohio Jurisprudence 3d (1988) 608, Records and Recording, Section 65. Failure to discover an instrument within the chain of title, even though improperly recorded by a county recorder, will not negate constructive notice. See, *Roebuck v. Columbia Gas Transm. Corp., supra.*

However, a purchaser is obligated to examine only those instruments which, through due diligence, could reasonably be expected to exist in the record chain of title. *Baker v. Koch, supra.* See, generally, 66 American Jurisprudence 2d (1973) 428, Records and Recording Acts, Section 144. He is not required to exercise a higher degree of diligence and undertake an exhaustive search of records to discover the most remote adverse claims or encumbrances. *Spring Lakes v. O.F.M. Co., supra*, at 337, citing, 1 Patton on Titles (2 ed. 1957) 231-232, Section 69. To impute to a purchaser constructive notice of an instrument outside the chain of title merely because it was recorded, "is wholly inconsistent with equitable principles ***" 66 American Jurisprudence 2d (1973) 410, Records and Recording Acts, Section 114. Thus, a document erroneously recorded due to a mistaken description in the conveying instrument is not within the chain of title and does not provide constructive notice to subsequent bona fide purchasers. 1

McDermott's Ohio Real Property (4 ed. 1988) 28, 29, Section 1-31C.

Applying these principles, we conclude that the manifest weight of the evidence established that Columbia Gas's purported easement was not within the Bennetts' chain of title. Consequently, we conclude that the Bennetts did not have constructive notice of the easement and the trial court erred in so concluding.

The record indicates that the instrument granting Ohio Fuel Gas Company an easement through Orchard Hills Estates identified the property encumbered as sections 21 and 22. The deed was then recorded by the County Recorder and indexed under these sections (Tr. 153). The subdivision was later platted with lot 886 being a parcel in former section 20.

A thorough examination of the tract index would not have revealed any easement for a gas transmission line through lot 886 because the granting instrument was recorded and indexed under sections 21 and 22 (Tr. 150). Further, neither would an examination of the grantor-grantee index have revealed an easement for a gas transmission line through lot 886. As the County Recorder testified, the grantor-grantee index would only have indicated that an easement was conveyed by Southard to Ohio Fuel Gas Company (Tr. 154). Having found the conveyance, a corresponding search of the tract index would again only have revealed that the easement encumbered sections 21 and 22. Thus, even if a title examiner had undertaken an exhaustive inspection of all conveyances by Southard relative to the Orchard Hills Estates, he would have had no reason to know that an easement encumbered lot 886. However, the law does not require such exhaustive scrutiny. See, *Spring Lake v. O.F.M. Co., supra,* at 336, 337.

Columbia Gas also argues, under the rule of *Roebuck v. Columbia Gas Transm. Corp., supra,* that an error in recordation does not negate constructive notice. However, *Roebuck* is different from the circumstances before us. In *Roebuck,* Columbia Gas had a pipeline easement which the county recorder erroneously recorded as a lease. In holding that the purchaser had constructive notice despite the error and absence of a metes and bounds description, we held that where a deed is erroneously indexed *by the recorder,* the great weight of authority supports sustaining the validity of the grantor's deed. *Roebuck v. Columbia Gas Transm. Corp., supra,* at 219-220.

Here,, however, the error was due to an inaccurate description in the deed itself, not an indexing error by the County Recorder (Tr. 153). Where an instrument erroneously identifies the property burdened and that erroneous description causes the instrument to be recorded outside the chain of title through no fault of the recorder, a subsequent bona fide purchaser cannot as a matter of law be charged with constructive notice of the conveyance.

Neither is this easement saved by arguing that the plat map provided actual notice of the easement or that the Bennetts' had inquiry notice by reason of the orange-white marker. Both types of notice are predicated on possessing either actual notice of a prior claim, see, *Warner v. Railroad Co.* (1883), 39 Ohio St. 70, *In re Fahle's Estate, supra,* 6A Powell on Real Estate (1990) 82-34, Section 905[1][d][i], or some factual basis to warrant further investigation into the title of a parcel, see, *Jaeger v. Hardy* (1891), 48 Ohio St. 335, 6A Powell on Real Estate (1990) 82-47, Section 905[1][d]iii. Here, the plat map reflected the presence of a gas pipeline but gave no indication of any easement. And, although Bennett admitted seeing a, pipeline marker, he saw only one and that was across the street. Neither the plat map or the orange-white marker provided sufficient facts to, charge the Bennetts with actual or constructive notice of an easement along the western boundary of their property.

We conclude that the trial court erred in finding the easement was within the Bennetts' chain of title and consequently that they had constructive notice thereof. The manifest weight of the evidence indicated that the easement was erroneously recorded due to a section designation error by Columbia Gas's predecessor in interest. The Bennetts' cannot now be charged with constructive notice and thus the easement is unenforceable against them. Cf., *Spring Lake v. O.F.M. Co., supra.*

The Bennetts first and second assignments of error are sustained.

## IV.

*The Bennetts' Third Assignment of Error and Columbia Gas's Cross-Appeal Assignment of Error*

Having found that the instrument granting the easement was outside the Bennetts' chain of title and thus unenforceable against them, we are nevertheless required by R.C. 2502.22 and App.R. 12(A) to address the remaining assignments of error. Because the parties' two remain-

ing assignments of error raise similar questions concerning the scope of an easement, we will consider them together.

The Bennetts state as their third assignment of error:

"THE TRIAL COURT ERRED BY EXPAND-ING THE SCOPE OF THE ALLEGED EASE-MENT IN A MANNER WHICH EFFEC-TIVELY PROHIBITS THE APPELLANTS FROM CONSTRUCTING ANY STRUCTURE ON THEIR PROPERTY."

Columbia Gas states as its cross-appeal assignment of error:

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS PERMANENT IN-JUNCTION BY ALLOWING DEFENDANTS TO CONSTRUCT A DETACHED GARAGE WITHIN TWENTY-FIVE FEET FROM PLAINTIFF'S HIGH-PRESSURE, NATURAL-GAS TRANSMISSION PIPELINE IN THAT SUCH CONSTRUCTION IS CONTRARY TO THE TERMS OF THE EASEMENT AND RIGHT-OF-WAY, IS CONTRARY TO THE EVIDENCE AS TO THE INTERFERENCE WITH PLAINTIFF'S DUTY TO OPERATE, REPAIR, AND MAINTAIN THE PIPELINE, AND IS CONTRARY TO AND ALLOWS A VIOLATION OF RESTRICTIVE COVENANTS ON THE PROPERTY."

Assuming, arguendo, that an enforceable easement had existed, its scope would generally be defined by the language of the granting instrument. Cf ., *Lowe v. Redgate* (1884), 42 Ohio St. 329, 339. However, without a specific delin-eation of the easement in the instrument, courts may look to other circumstances to ascertain the intention of the parties and determine the scope of the easement. Cf ., *Hieatt v. Morris* (1860), 10 Ohio St. 523, 529; *Yoder v. Columbus & Southern Electric Co.* (1974), 39 Ohio App.2d 113. See, also, 36 Ohio Jurisprudence 3d (1982) 457, Ease-ments and Licenses, Section 55. For example, where an instrument is silent on the width and depth to be given a gas pipeline easement, a court may define its scope by what is reasonably necessary and convenient to accomplish the purpose for which the easement was granted. See, *Roebuck v. Columbia Gas Transm. Corp., supra; Rueckel v. Texas Eastern Transm. Corp.* (1981), 3 Ohio App.3d 153.

The record before us indicates that the granting instrument did not define the scope of the easement. However, at trial several witnesses for Columbia Gas testified that a twenty-five foot easement was needed to maintain the pipeline and protect public health and safety. These witnesses testified that concerns over migrating gas, pipeline corrosion, heavy equipment require-ments, and public safety necessitated such an easement (Tr. 50-53, 55, 63, 96-97, 99, 168). Bennett countered these contentions by relying solely on the fact that Columbia Gas had "al-lowed" other property owners to encroach on the easement.

We conclude that trial court had sufficient competent, credible evidence before it to find that a twenty-five foot easement was needed. Absent a specific provision in the granting instrument defining the scope of the easement, the trial court was required to garner from the evidence present-ed at trial what scope was reasonably necessary and convenient to carrying out the purpose of the easement. See, *Roebuck v. Columbia Gas Transm. Corp., supra; Rueckel v. Texas Eastern Transm. Corp., supra.* The evidence indicates that a twenty-five foot easement was reasonable under the circumstances.

However, having found that Columbia Gas had a twenty-five foot easement, the trial court could not then, *sua sponte,* permit the Bennetts to encroach thereon and construct a garage. An easement is "the grant of a use on the land of another." *Alban v. R.K. Co.* (1968), 15 Ohio St. 2d 229, 231. As noted in *Cincinnati, Hamilton & Dayton Railway Co. v. Wachter* (1904), 70 Ohio St. 113, 118:

"An easement implies necessarily a fee in another, and it follows that it is a right, by reason of such ownership, to use the land for a special purpose, and one not inconsistent with the general property in the land of the owner of the fee, *his property rights, however, to be exer-cised in such way as not to unreasonably interfere with the special use for which the easement was acquired."* (Emphasis added)

Thus, the owner of the servient estate, in this case the Bennetts, has no right to interfere with the proper use and enjoyment of an ease-ment. Cf., *Clement v. Fishler* (1927), 28 Ohio App. 392, at syllabus 3; *Rueckel v. Texas Eastern Transm. Corp., supra.* The servient estate owner may use his land only in a manner that is not inconsistent with the easement. *Cincinnati, Hamilton & Dayton Railway Co. v. Wachter, supra.* See, also, 36 Ohio Jurisprudence 3d (1983) 455, 456, Easements and Licenses, Sections 53 and 62.

We conclude that the trial court abused its discretion by permitting the Bennetts to encroach on the easement. Having found that Columbia

Gas required a twenty-five foot easement to maintain its pipeline, the trial court could not, consistent with that finding, permit the Bennetts to build a structure that would clearly interfere with the reasonable and proper enjoyment of the easement.

The Bennetts' third assignment of error is overruled. Columbia Gas's cross-appeal assignment of error is sustained.

## V.
### Conclusion

For the reasons stated, above we conclude the trial court erred in finding the easement within the Bennetts' chain of title and charging them with constructive notice thereof. The injunction granted by the trial court in favor of Columbia Gas will, accordingly, be vacated.

WOLFF, P.J., and WILSON, J., concur.