OPINION
{¶ 1} H S Company, Ltd. ("H S") appeals the August 21, 2003 judgment entry of the Portage County Court of Common Pleas granting summary judgment in favor of the city of Aurora ("Aurora"). For the reasons set forth below, we affirm the decision of the trial court in this matter.
 {¶ 2} In 1961, Aurora obtained a parcel of land which included "rights of way to be used as roadway for means of ingress and egress to and from the * * * property." Soon thereafter, Aurora divided the parcel and sold a portion of the original portion to Irene Brandes ("Brandes"). In the deed (the "Brandes deed"), Aurora reserved "an easement and access for the purpose of repair, replacement, maintenance or removal of the water mains." The parties also entered a letter agreement granting Aurora "a right of way" to a road "that will extend from Route # 43 to and beyond the present [Aurora] pump house."
 {¶ 3} The agreement, however, was never completely executed or clarified. Thus, in 1979, Aurora and Aurora Village Commons ("Village Commons"), the subsequent purchaser of Brandes' property, entered an agreement (the "easement agreement") granting a "permanent easement" to a "permanent driveway * * * running from State Route 43 westerly to the Central Wellfield." The easement agreement was recorded in the Portage County Record of Deeds on October 16, 1979. The location of the driveway has not changed since prior to the granting of the permanent easement.
 {¶ 4} In 1981, Village Commons divided its parcel of property and sold a portion to T.W. Grogan Company ("T.W. Grogan"). The warranty deed ("T.W. Grogan deed") was filed in the Portage County Record of Deeds on September 15, 1981, and clearly referenced Aurora's permanent easement by volume and page number. In 2000, T.W. Grogan conveyed the property to H S.
 {¶ 5} On October 22, 2001, H S filed a complaint seeking damages for trespass, to quiet title to the portion of the property being used by Aurora for the driveway, and to enjoin Aurora from continuing its use of the driveway. In February 2002, H S conveyed the relevant portion of the property to Aurora Commons Phase Two L.L.C. ("Aurora Commons"). Thus, H S filed an amended complaint adding Aurora Commons as a new party plaintiff (together "the appellants").
 {¶ 6} On May 15, 2003, Aurora filed a motion for summary judgment claiming that the existence of the permanent easement precluded recovery by the appellants. The appellants filed a response to Aurora's motion. On August 21, 2003, the trial court granted summary judgment in favor of Aurora. The appellants timely appealed and raise the following assignment of error:
 {¶ 7} "The Trial Court erred in granting Defendant/Appellee's motion for summary judgment on Plaintiffs/Appellants' claims of trespass and quiet title since there were genuine issues of material fact and Defendant/Appellee was not entitled to judgment as a matter of law."
 {¶ 8} In their sole assignment of error, the appellants argue that they did not have knowledge of the easement and that the easement did not comply with the requisite statutory requirements, specifically that the signatures on the easement agreement were not witnessed and that the instrument was not recorded in the chain of title. Moreover, the appellants claim that the purported easement was not clearly identified in any of the recorded documents. Thus, the appellants argue that the purported easement is not enforceable against them, bona fide purchasers.
 {¶ 9} Summary judgment is appropriate when there is "no genuine issue as to any material fact [and] * * * reasonable minds can come to but one conclusion," which is adverse to the nonmoving party. Civ. R. 56(C). In reviewing a motion for summary judgment, the court must construe the evidence in favor of the nonmoving party. Id. Moreover, an appellate court conducts a de novo review of the trial court's decision to grant summary judgment. Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186.
 {¶ 10} Actionable trespass requires an interference with theexclusive possessory interest of the property owner. Brown v. Cty.Commrs. of Scioto Cty. (1993), 87 Ohio App.3d 704, 717 (citation omitted). "[A]n easement is an interest in the land of another." Smithv. Gilbraith (1991), 75 Ohio App.3d 428, 434. Thus, a cause of action in trespass will not lie when the purported trespasser holds an easement to the property on which he or she is purportedly trespassing. SeeBlashinsky v. Topazio (Apr. 17, 1987), 11th Dist. No. 11-113, 1987 Ohio App. LEXIS 6445, at *9 (a cause of action in trespass cannot be maintained where an easement permits the entrance upon the property). Obviously, a party is not entitled to quiet title if another party has a valid easement to the property at issue. See R.C. 5303.01. Thus, if Aurora acquired a valid easement to the driveway, the granting of summary judgment was appropriate.
 {¶ 11} An easement may be expressly or impliedly acquired, Amsbary v.Little (Mar. 11, 1991), 4th Dist. No. 90 CA 16, 1991 Ohio App. LEXIS 1186, at *8 (citation omitted), "by grant, implication, prescription, or estoppel." Kamenar RR. Salvage, Inc. v. Ohio Edison Co. (1992),79 Ohio App.3d 685, 689 (citation omitted). When a party claims that an easement is expressly granted, "it is necessary that a grant be included in the language of a deed, lease, or the like." Id. (citation omitted). Moreover, it must meet the statutory requirements of R.C. 5301.01. Id.
 {¶ 12} Although the former version of R.C. 5301.01 required the signature to be made in the presence of two witnesses, the amended statute no longer requires the signature to be acknowledged in the presence of witnesses. See R.C. 5301.01(A). Moreover, R.C. 5301.01(B)(1)(a) states that a document that was executed prior to the amendment and was not witnessed "is deemed properly executed and is presumed valid unless the signature of the grantor * * * was obtained by fraud." R.C. 5301.01(A) does, however, still require the document granting the easement to be signed by the grantor, with said signature properly acknowledged before a judge, notary public, etc.
 {¶ 13} "[A]cknowledgment * * * is required * * * for the purpose of affording proof of * * * due execution * * * by the grantor, sufficient to authorize the register of deeds to record it. * * * Acknowledgment has reference, therefore, to the proof of execution, and not to the force, effect, or validity of the instrument. * * * The record * * * without acknowledgment or proof as prescribed by statute does not afford constructive notice of it." Citizens Natl. Bank v. Denison (1956),165 Ohio St. 89, 94 (citation omitted).
 {¶ 14} "[A] bona fide purchaser for value is bound by an encumbrance upon land only if he has constructive or actual knowledge of the encumbrance." Tiller v. Hinton (1985), 19 Ohio St.3d 66, 68. "Ohio has long abided by the principle that a purchaser of real property is charged with constructive notice of all prior conveyances recorded in his chain of title." Columbia Gas Transm. Corp. v. Bennett (1990),71 Ohio App.3d 307, 315 (citations omitted). Thus, the proper filing of a conveying instrument that comports with R.C. 5301.01 will impute constructive notice of that document, and its incorporated encumbrances, upon the purchaser.
 {¶ 15} In this case, the easement agreement was not properly acknowledged. As such, the filing of the easement agreement alone could not impute constructive notice of the easement upon the appellants. SeeDenison, 165 Ohio St. at 94. However, the Brandes deed and the T.W. Grogan deed were properly executed in accordance with R.C. 5301.01. Thus, since these documents were also properly filed pursuant to R.C.5301.25 and were in the appellants' chain of title, the appellants had constructive notice of these documents. Consequently, since the Brandes deed expressly granted Aurora "an easement and access for the purpose of repair, replacement, maintenance or removal of the water mains," the appellants had constructive notice that Aurora retained an easement to the property the appellants were purchasing. Moreover, the T.W. Grogan deed specifically referenced the easement agreement and, in doing so, identified its location in the recorder's office by volume and page number. We, therefore, find that the appellants had constructive notice of the easement agreement and, thereby, had constructive notice of the existence of the easement.[1] See Cincinnati Entertainment Assoc.,Ltd. v. Bd. of Commrs.of Hamilton Cty. (2001), 141 Ohio App.3d 803, 814, quoting R.C. 5301.25(A) ("The effect of * * * a recorded, but improperly acknowledged conveyance is that the conveyance is `fraudulent, so far as relates to a subsequent bona fide purchaser * * * [with] no knowledge of the existence of such former instrument.'").
 {¶ 16} We now must determine whether the easement sufficiently was described. The failure to describe an easement by metes and bounds does not render the conveying instrument invalid. See Roebuck v. Columbia GasTransm. Corp. (1977), 57 Ohio App.2d 217, 219-220. The extent and scope of an easement "are to be ascertained from the language of the grant and the circumstances surrounding the transaction." Amsbary, 1991 Ohio App. LEXIS 1186, at *8 (citation omitted). The use of extrinsic evidence is proper to determine the extent and scope of an imprecise easement.Roebuck, 57 Ohio App.2d at 220 (citation omitted); Amsbary,
1991 Ohio App. LEXIS 1186, at *9 (citation omitted). Thus, when an expressed easement imprecisely describes the location of an easement, the court must examine extrinsic evidence to determine the location as intended by the parties, which is typically indicated by use. See Amsbary,
1991 Ohio App. LEXIS 1186, at * 12 (citation omitted) ("where the terms of a right of way are general and indefinite, its location and use by the grantee, acquiesced in by the grantor, will have the same legal effect as if it had been fully described by the terms of the grant").
 {¶ 17} In this case, the easement agreement describing the location of the easement is not a precise metes and bounds description. However, in viewing the entire record, we find that the easement was sufficiently identified. The easement agreement granted a "permanent easement" to a "permanent driveway * * * running from State Route 43 westerly to the Central Wellfield." In a letter agreement from Brandes, the letter describes "[t]he easement now held by * * * Aurora on the roadway extending from Route 43 to the main pump house shall continue." Moreover, Richard Shaw, the General Partner of Village Commons at the time of the conveyance, states in an affidavit that "it was the expectation and intent * * * that [the easement agreement] * * * would grant to * * * Aurora a permanent easement to have and maintain the then existing roadway and driveway which extended westerly from the intersection of State Route 43 and Maple Lane." Shaw also states therein that the "roadway and driveway existing and described in the [easement agreement] were then and remain in their present location." Finally, Charles Becker, an employee of Aurora since 1965, states in an affidavit that the "driveway, which connects with an unnamed roadway that extends westerly from the intersection of State Route 43 and Maple Lane, has remained in its present location since at least May of 1965" and that the "driveway and the unnamed roadway it connects are located directly over and follow a water main pipeline that runs from the intersection of State Route 43 and Maple Lane to the Service Center property which was originally the location of the Central Wellfield for * * * Aurora and the location of the main pump station," which is clearly indicated on a map submitted in the record.
 {¶ 18} The above referenced documents express a clear intent by the parties to create a permanent easement for the driveway extending from State Route 43, which has been in existence and used since at least 1965. Moreover, when reviewing the various maps and aerial photographs in the record with the above evidence in mind, the location of the easement is sufficiently identifiable. Thus, "[a]lthough more particular terminology could have been utilized to describe the easement," id. at *10, we find that the easement, as described, was sufficient. See id. at *11 ("the easement described as a twenty-five foot wide road `as now traveled' is sufficiently definite").
 {¶ 19} For the foregoing reasons, we hold that the appellants' sole assignment of error is without merit. The decision of the Portage County Court of Common Pleas is affirmed.
Ford, P.J., and Rice, J., concur.
[1] Even if we found that the appellants did not have constructive notice of the easement agreement, since the existence of an easement was contained in the appellants' chain of title, the court could have properly considered the easement agreement's content as extrinsic evidence of the intent of the parties and of the scope of the easement. ColumbiaGas Transm. Corp. v. Bennett (1990), 71 Ohio App.3d 307, 318 (citations omitted).