[Cite as *Strahm v. Buckeye Pipe Line Co., L.P.*, 2011-Ohio-1171.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY


ROBERT C. STRAHM, ET AL.,                   CASE NO. 1-10-60

   PLAINTIFFS-APPELLANTS,

 v.

BUCKEYE PIPE LINE COMPANY, L.P.,                   O P I N I O N

   DEFENDANT-APPELLEE.


Appeal from Allen County Common Pleas Court
Trial Court No. CV 2009 1319

Judgment Reversed and Cause Remanded

Date of Decision: March 14, 2011


APPEARANCES:

   *Bernard K. Bauer* for Appellant

   *Paul J. Coval* for Appellee

**WILLAMOWSKI, J**.

{¶1} Plaintiffs-Appellants, Robert C. Strahm and Donna J. Strahm ("Appellants" or "the Strahms"), appeal the decision of the Allen County Court of Common Pleas granting partial summary judgment in favor of Defendant-Appellee, Buckeye Pipe Line Company, L.P. ("Buckeye"). The Strahms maintain that the pipe line easements across their land did not contain any explicit language that would permit Buckeye to clear all the trees, shrubs and vegetation from the easements without providing compensation. For the reasons set forth below, the judgment is reversed.

{¶2} The Strahms filed an action for declaratory judgment and damages regarding a dispute concerning the duties and responsibilities of the parties under four pipe line easements affecting two adjacent parcels of property owned by the Strahms. The dispute in question began when Buckeye cleared all of the trees, shrubs and vegetation from an area on the Strahms' two properties which included, but may not have been limited to, the pipeline rights-of-way.

{¶3} In 1984, Mr. Strahm purchased two parcels of land (the "northern parcel" and the "southern parcel") in Richland Township. At the time of purchase, each piece of property was subject to separate pipe line easements originally granted to Sohio Pipe Line Co. ("Sohio") and Trans-Ohio Pipeline Co. ("Trans-

Ohio"). Buckeye is the successor in interest to the Sohio and Trans-Ohio easements.

{¶4} In 1947, Sohio obtained blanket easements over both parcels to "lay, maintain, operate, repair, replace and remove a pipe line and all necessary fixtures, equipment and appurtenances thereto \*\*\*." The easements also specified the rights to the premises that were reserved to the grantors of the right-of-way and their successors:

> **Grantor and Grantor's heirs and assigns reserve the right fully to use and enjoy the said premises except insofar as such use and enjoyment shall be inconsistent with the exercise by the Grantee of the rights herein granted to it.**

(Sohio 1947 Easement.) The Sohio easements also provided for compensation to the landowner in the event of damages as a result of exercising the easement rights:

> **The Grantee \*\*\* agrees to bury said pipe line so that it will not interfere with the cultivation of the land and also to pay any damages to crops, buildings, drain tile, fences and timber arising from the exercise by the Grantee of any of the rights herein conferred upon it.**

(Id.)

{¶5} Sometime later, in 1973, Trans-Ohio also obtained two separate easements to "construct, lay, maintain, operate, alter, repair, remove, change the size of, and replace a pipe line and appurtenances thereto \*\*\*" over both the northern and southern parcels. These easements provided for a right-of-way

which extended 15 feet on each side of the pipe line. The Trans-Ohio easements also specified the rights of the landowners as to their use and enjoyment of the easements, although they contained somewhat different wording than the Sohio easements as to the Grantors' retained rights and the provisions for compensation.

> **Grantors are to fully use and enjoy the said premises, except for the purposes granted to the said Grantee and provided that the said Grantors shall not construct nor permit to be constructed any house, structures or obstructions on or over, or that will interfere with the construction, maintenance or operation of, any pipe line or appurtenances constructed hereunder, and will not change the grade over such pipe line.**

(Trans-Ohio 1973 Easement.) These easements specified that Trans-Ohio would be responsible for the payment of damages to "crops, timber, or fences" from the *construction* of the pipe lines and, thereafter:

> **to pay such damages which may arise to growing annual crops or fences from the maintenance, alteration, repair, removal, change of the size, or replacement thereof.**

(Id.)

{¶6} After he purchased the properties, Mr. Strahm entered into an agreement with the National Conservation Reserve Program to plant trees and shrubs on his property in order to create a wildlife habitat and help preserve natural resources. Between 1988 and 1994, Mr. Strahm planted specified grasses as well as dogwoods, white pines and ash trees, pursuant to the recommendations

-4-

of the conservation organization. The Strahms did not believe that their plantings were inconsistent with their rights to use their land according to the easements.

{¶7} However, on November 14, 2001, Buckeye's Regional Right-of-Way Agent, Martin White ("Mr. White") sent Mr. Strahm a letter documenting the fact that the easements contained substantial pine and hardwood trees. The letter stated that Buckeye had attempted to clear the right-of way in 1997 and again in 2001, but that the Strahms had refused to allow the work to be done. The letter stated that "[t]rees are a non-permitted use of the right-of-way as they are substantial impediments for access to and workspace around the pipe lines during either routine or emergency pipe line maintenance work." (Plaintiff's Ex. 4 to the 2009 Dep. of Mr. White.) Mr. White was going to "review the easements more thoroughly" and complete a report before the end of the year.

{¶8} On November 21, 2001, and again on July 30, 2002, Mr. Strahm sent letters to Mr. White asking Buckeye to send him "all easements relating to [my properties] including all restrictions and regulations involving these easements." In his deposition, Mr. White testified that he did not recall that he had ever provided Mr. Strahm with the information he had requested.

{¶9} On October 1, 2007, Buckeye sent the Strahms a letter informing them of Buckeye's intention to clear the trees and vegetation from the 30-foot wide easements (15 feet on each side of the pipe line) by the latter part of the month,

stating that "Buckeye cannot access or maintain its pipe line under present right-of-way conditions." (Plaintiffs' Complaint, Ex. 5.) In the letter, Mr. White acknowledged that he had capitulated to the Strahms' objections in the past, but that current easement conditions inhibited Buckeye's ability to maintain regulatory compliance, including patrolling the corridor by air in search of pipe line failure. The letter stated:

> **You purchased this property subject to Buckeye's easement rights. A 'nature preserve,' Pheasants Forever habitat, and commercial tree nursery activities are contrary to the spirit and intent of the easement grant and as such are non-permitted uses of the right of way. \*\*\* Consequently, the trees/vegetation have grown into substantial impediments for the safe and practical operation and maintenance of the pipe line.**

(Id.) The letter stated that it was intended as a "courtesy notification," not as "a negotiation or debate of easement rights." (Id.)

{¶10} On October 23 and 24, 2007, Buckeye removed all of the trees and brush, and completely mowed the fields in the easements to prevent the potential regrowth of seedlings. Mr. White explained why they mowed all of the vegetation, in addition to just removing the trees and shrubs:

> **Right of way clearing is preventive maintenance. The longer we delay, the worse it becomes; and so, we wanted to mow this at this point in time -- as a matter of vegetation maintenance.**

(White Dep. at pp. 23-24.)

{¶11} The Strahms filed a complaint[1] for declaratory judgment and damages. The Strahms maintained that Buckeye's complete clearing of the entire area of the easements went beyond the rights granted by the explicit language of the easements. The Strahms also claimed that Buckeye cleared and damaged land and property that was not within the easements, specifically, that Buckeye cleared a path in excess of 30 feet at some points (up to 100 feet wide); that Buckeye left ruts in the land; and that Buckeye destroyed a small bridge that was not within the easement. Buckeye denies these claims. The complaint for declaratory judgment asked the court to resolve the controversy as to whether the easements permitted Buckeye to enter the properties "to clear vegetation" and not "to construct, lay, maintain, operate, alter, repair, remove, change the size of, [or] replace" a pipe line. The Strahms also requested compensation, claiming that Buckeye removed and damaged trees and shrubs having a total replacement value of over $222,000, and that Buckeye caused additional damages on and off the rights-of-way totaling $16,500.

{¶12} Buckeye denied all of the Strahms' assertions and filed a motion for partial summary judgment on June 15, 2010.[2] Buckeye argued that the easements

---

[1] The Strahms originally filed their complaint on September 17, 2008, Case No. CV 2008 1361. However, they referenced only the Trans-Ohio easements in that complaint. After discovering the omission of the Sohio easements, the Strahms voluntarily dismissed that complaint and re-filed this Case No. CV 2009 1319 on December, 11, 2009, seeking essentially the same relief based on the same allegations.

[2] On March 12, 2010, the trial court entered its pre-trial order setting the case schedule. Cross-motions for summary judgment were to be filed by June 15, 2010, with any responses filed within 30 days after any motions were filed.

permitted Buckeye to remove timber during maintenance and otherwise permitted Buckeye to remove obstructions, including trees, shrubs, and vegetation, that interfered with its right to access and maintain its pipe lines. Buckeye asserted that the language of the respective easements, along with Ohio law, established Buckeye's rights to clear the easements. Buckeye maintained that the easements contemplated such removal because it is "reasonably necessary and convenient" to facilitate Buckeye's access and maintenance of the pipe lines, and that the removal of vegetation facilitated compliance with Federal requirements. (Buckeye's Mtn. for Sum. Judgmt., pp. 7-8.) Buckeye asserted that the trees, shrubs, and vegetation were removed because they constituted "substantial impediments for the safe and practical operation and maintenance" of the respective pipe lines. (Id. at 9.) Buckeye further proposed that even if the easements did not explicitly give Buckeye the right to remove the vegetation from the rights-of-way, the surrounding circumstances and consideration of what is "reasonably necessary and convenient" supports the conclusion that Buckeye is permitted to remove those items within its rights-of-way. (Id.) Furthermore, the terms of the easements did not require Buckeye to compensate the Strahms for the removal of such "obstructions."

{¶13} The Strahms responded with a cross-motion for partial summary judgment on July 15, 2010,[3] arguing that the explicit language contained in the respective easements did not unambiguously permit Buckeye to remove trees, shrubs and vegetation from its rights-of-way without compensation to the Strahms. The Strahms argued that Buckeye's actions were improper because the mowing of the easements was not done in conjunction with laying, maintaining, operating, repairing, replacing or removing a pipe line. In addition to the absence of explicit language giving Buckeye the right to clear the easements for the sake of clearing them, the Strahms also asserted that there was no prohibition against planting trees in the rights-of-way because the language in the easements only prohibited the *construction* of a house, structure, or obstruction in the rights-of-way, but it did not prohibit the planting of trees. The Strahms also asserted that Buckeye's acquiescence to the presence of the trees over a period of years may be considered an estoppel. And finally, the Strahms maintained that federal regulations did not give Buckeye the implicit right to remove the trees, shrubs and vegetation.

{¶14} On August 2, 2010, the trial court issued its decision granting partial summary judgment in favor of Buckeye, finding that (1) both easements gave Buckeye the right to remove trees, shrubs and other vegetation from the rights-of-way as an exercise of their "maintenance" rights; and, (2) the Trans-Ohio

---

[3] Buckeye maintains that the Strahms' cross-motion for summary judgment was untimely. See fn. 2.

easements did not require Buckeye to compensate the Strahms for the removal of trees when exercising its rights under the easements. However, because the Sohio easements required Buckeye to compensate the Strahms for the removal of trees in the easements when exercising its rights, there remained a genuine issue of material fact as to (1) whether the Strahms' conduct constituted an "interference or obstruction" with Buckeye's rights, in which case compensation is not required; and, (2) whether Buckeye exceeded its rights under the easement or otherwise unlawfully entered upon the Strahms' property and caused damages.

{¶15} The Strahms timely appeal and raise the following two assignments of error for our review.

### First Assignment of Error

**The Trial Court committed error prejudicial to the [Strahms] as a matter of law, by entering a declaratory judgment in favor of [Buckeye] which permitted it to remove trees, shrubs and vegetation to facilitate aerial inspection of pipeline rights of way, without compensation, when the Trans-Ohio easements which granted rights to it did not contain any explicit language regarding its proposed right of way clearing work.**

### Second Assignment of Error

**The Trial Court committed error prejudicial to the [Strahms] as a matter of law, by entering a declaratory judgment in favor of [Buckeye] which permitted it to remove trees, shrubs and vegetation to facilitate aerial inspection of pipeline rights of way, when the Sohio easements which granted rights to it did not contain any explicit language regarding its proposed right of way clearing work.**

{¶16} The arguments in the Strahms' two assignments of error assert that the explicit language in the Trans-Ohio easements (first assignment of error) and the Sohio easements (second assignment of error) did not permit Buckeye to enter upon the easements for the sole purpose of clearing vegetation. We shall address both assignments of error together, as they raise essentially the same issues.

{¶17} Appellate courts review decisions on summary judgment de novo, viewing the facts as most favorable to the non-moving party and resolving any doubt in favor of that party. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N .E.2d 241. Because it is a procedural device that terminates litigation, summary judgment must be awarded with caution. *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau*, 88 Ohio St.3d 292, 2000-Ohio-330, 725 N.E.2d 646.

{¶18} Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). "Summary judgment shall not be rendered unless it appears *** that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made ***." Civ.R. 56(C); *Temple v. Wean United, Inc*. (1977), 50 Ohio St.2d 317, 364 N.E.2d 267. "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." *Schnippel Constr., Inc. v.*

*Profitt*, 3d Dist. No. 17-09-12, 2009-Ohio-5905, ¶10, quoting *Lakota Loc. Schools Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 643, 671 N.E.2d 578.

**{¶19}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. Id.; *Vahila v. Hall*, 77 Ohio St.3d 421, 1997-Ohio-259, 429, 674 N.E.2d 1164. "Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." (Emphasis sic.) *Dresher* at 293, 662 N.E.2d 264.

**{¶20}** If the moving party meets this burden, the non-moving party then has a reciprocal burden to establish the existence of genuine issues of material fact. Id. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. *Mergenthal v. Star Banc Corp*. (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383.

{¶21} In this case, both parties agree with the undisputed fact that both the Trans-Ohio and the Sohio easements give Buckeye the right to "maintain" the pipe lines. The dispute arises from a difference in the parties' understanding as to what it means to "maintain" the pipe lines. The primary issue is whether that language in the easements gives Buckeye the right to clear all trees, shrubs, and vegetation over the entire area of the easements even when such clearing is not done in conjunction with any other work on the pipe line. And, if it does, is Buckeye required to compensate the Strahms for the removal of the timber from the Sohio easement?

{¶22} An easement is an interest in the land of another that entitles the owner of the easement (the dominant estate) to a limited use of the land (the servient estate). *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC* (2000), 138 Ohio App.3d 57, 66, 740 N.E.2d 328; *Alban v. R.K. Co.* (1968), 15 Ohio St.2d 229, 231, 239 N.E.2d 22, 23-24. When an easement is created by an express grant, as in this case, the extent and limitations upon the dominant estate's use of the land depend upon the language in the grant. See *Alban* at 232, 239 N.E.2d at 24; *Columbia Gas Transm. Corp. v. Bennett* (1990), 71 Ohio App.3d 307, 318, 594 N.E.2d 1, 7-8. When the terms in an easement are clear and unambiguous, a court cannot create a new agreement by finding an intent not expressed in the clear language employed by the parties. *Alexander v. Buckeye Pipe Line Co.* (1978), 53

Ohio St.2d 241, 246, 374 N.E.2d 146, 150. The language of the easement, considered in light of the surrounding circumstances, is the best indication of the extent and limitations of the easement. *Lakewood Homes, Inc. v. BP Oil, Inc.*, 3rd Dist. No. 5-98-29, 1999-Ohio-851, citing *Apel v. Katz*, 83 Ohio St.3d 11, 17, 1998-Ohio-420, 697 N.E.2d 600. However, courts have held that normal developmental changes and new inventions could entitle an easement holder to vary the mode of enjoyment and use of the easement. See, e.g., *Crane Hollow*, 138 Ohio App.3d at 67.

{¶23} In their complaint, the Strahms allege that the explicit language in the easements grants Buckeye the right to utilize the easements to "maintain *** *a pipe line*." (Emphasis added.) However, there is no explicit language giving Buckeye the right to maintain the *easements* or to enter upon the right-of-way for purposes other than those specified. Even Mr. White acknowledged that the easements do "not contain any explicit language regarding Buckeye's proposed right-of-way clearing work." (Complaint, Ex. 5; see also White Dep., p. 30.) It was undisputed that no maintenance or operational work was being done on the pipe lines when the clearing was done.

{¶24} However, Buckeye maintains that the removal of all of the trees and vegetation from the entire easement area is necessary for its proper maintenance of the pipe line. Mr. White has indicated that clearing vegetation is part of

Buckeye's standard practice of "preventative maintenance" and was a matter of "vegetation maintenance." (White Dep., p. 23-24.)

{¶25} The question as to what constitutes maintenance of a pipe line under the Trans-Ohio and Sohio easements appears to raise a genuine issue of material fact that would preclude summary judgment. In fact, the trial court even noted in its judgment entry that "as the Third District stated in *Voisard v. Marathon Ashland Pipe Line*, these are factual inquiries ***. (Aug. 2, 2010 J.E., pp. 6-7, *Voisard v. Marathon Ashland Pipeline, LLC.,* 3d Dist. No. 9-05-49, 2006-Ohio-6926, ¶7, stating "the issues presented in this type of case are questions of fact, which must be resolved on a case-by-case basis.")

{¶26} Buckeye has set forth numerous *arguments* as to why it should be permitted to clear the easements as it wishes. However, we do not find that Buckeye has pointed to any admissible *facts in the record* to support the contention that such clearing constitutes necessary "maintenance" under the terms of the relevant easements and the facts in this case. Although not necessarily required to do so, neither party submitted any affidavits or other types of Civ.R. 56 evidence. Even the depositions of Mr. Strahm and Mr. White were not filed in this

case -- copies were merely attached to Buckeye's motion for summary judgment.[4] Buckeye's arguments, along with unsubstantiated, conclusory opinions stated by Mr. White in letters to the Strahms, do not constitute evidence that would entitle Buckeye to summary judgment.

**{¶27}** For example, Buckeye has asserted that the trees had to be removed because their roots could interfere with the pipe line. While that might certainly be one reason to justify Buckeye's removal of the trees, we did not find any evidence anywhere in the record as to how deep the pipe lines were buried, how deep the roots of the trees extended, or whether there was any actual or likely infringement upon the pipe line by any tree roots. In fact, none of Buckeye's assertions were supported by the type of admissible summary judgment evidence that would establish the necessity of clearing the easements as a function of "maintaining a pipe line."

**{¶28}** Buckeye also made many legal arguments, citing cases where courts determined that a pipe line company was entitled to remove trees and vegetation from the rights-of-way in order to maintain the pipe lines. However, many of

---

[4] Civ.R. 56(C) states that "judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, *timely filed in the action,* show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." (Emphasis added.) But, see, e.g., *Whanger v. Grange Mut. Cas. Co.,* 7th Dist. No. 06-JE-18, 2007-Ohio-3187, ¶9 (unfiled deposition was not proper summary judgment evidence, but it was within the trial court's discretion to consider the conforming summary judgment evidence when no objection was made by the parties.) The parties did not object in this case. However, we note that some of the photographic exhibits referenced in the depositions were not included anywhere in the record.

these cases were decided *after a trial* wherein both sides had an opportunity to present their evidence and the courts' decisions were based upon factual testimony, often from expert witnesses. See, e.g., *Andrews v. Columbia Gas Transm. Corp.* (C.A.6, 2008), 544 F.3d 618, 622 (summary judgment was denied and case proceeded to trial).

**{¶29}** Furthermore, other cases cited by Buckeye were distinguishable in that the relevant facts and issues were different and/or the controlling language in the easements was different. For instance, in *Voisard v. Marathon*, supra, this Court held that Marathon could maintain the pipe line as it believed was necessary. 2006-Ohio-6926 at ¶8. However, the language in that particular easement provided Marathon "'the right of way to lay, *maintain*, operate and remove a pipe line, *if the same shall be thought necessary by said grantee*[.]'" (Emphasis sic.) Id. Buckeye's easements do not contain such broad language. In another case, the easement *originally* contained language similar to that in the easements before us now. However, several decades later, an *amended* easement was negotiated and the new language prohibited the planting or permitting of any trees or non-shrubbery woody growth anywhere over the specified right-of-way. *Panhandle Eastern Pipeline Co. v. Howey*, 6th Dist. No. L-01-1037, 2001 WL 1155838, 1. The Strahms' easements have not been renegotiated to include any language prohibiting trees and non-shrubbery growth. And, in a case highly relied

upon by Buckeye, the language of the easement also contained the word "inspect," which is absent from the terms in this case. *Rueckel v. Texas Eastern Transm. Corp.* (1981), 3 Ohio App.3d 153, 156, 444 N.E.2d 77 (the easement conveyed the right to "lay, operate, renew, alter, inspect and maintain a pipe line ***.")

{¶30} Buckeye points to some cases where courts permitted tree removal in order to allow for aerial inspection of the pipe line. See, e.g., *Voisard v. Marathon*, supra. But, see, *Lakewood Homes v. B.P.,* 1999-Ohio-851 ("[the pipe line company] did not present any evidence to the trial court that demonstrates that its maintenance and inspection could not be carried out in a manner which did not impose additional burdens on Lakewood Homes' servient property.") While we acknowledge that the necessity of aerial inspection may, under certain circumstances, require a pipe line company to clear *some* trees from an easement, the testimony concerning that need in this case was ambiguous and raised questions of fact. Mr. White stated that they "have to patrol" the pipe line, and it could be accomplished by walking it or by aerial inspection. (White Dep., pp. 24-25.) Aerial inspection was just one of "several reasons" why Buckeye maintained the rights-of-way. (Id.) There was also testimony that another pipe line company also had an easement through the Strahms' properties and that company had not cut down trees in order to patrol their pipe line. (Id.)

{¶31} Buckeye also cited several cases for the proposition that it was entitled to do what was "reasonably necessary and convenient" to maintain the rights-of-way. However, the cases cited using that language involved situations in which the width or dimensions of the right-of-way was not specified in the language of the easement, and that was the standard used by the courts to determine what the *size* of the easement should be. See, e.g., *Pomante v. Marathon Ashland Pipe Line L.L.C.*, 187 Ohio App.3d 731, 2010-Ohio-1823, 933 N.E.2d 831, ¶10 (when establishing the dimensions of an easement, the trial court must consider what is "reasonably necessary and convenient" to serve the purpose for which the easement was granted.) See, also, *Voisard v. Marathon*, supra; *Crane Hollow*, 138 Ohio App.3d at 67-68, 740 N.E.2d at 334. In those cases, the trial courts heard evidence as to what was "reasonably necessary and convenient" in order to determine what were the equitable limitations of the *dimensions of the easement*; not necessarily what was "reasonably necessary and convenient" as to the *utilization* of the easement.

{¶32} And, concerning the issue of the appropriate dimensions of an easement, we do not find where the width of the 1947 Sohio right-of-way was delineated in the easement. This is an issue of fact that the trial court must determine in order to ascertain whether Buckeye removed trees and vegetation beyond the bounds of the easements if those boundaries were not specified. See,

e.g., *Crane Hollow*, 138 Ohio App.3d at 67, 740 N.E.2d at 334 "(when the intended dimensions of an easement are not expressed in the grant itself, determining the dimensions becomes largely a question of fact ***.")

{¶33} Buckeye asserts that the easements not only give Buckeye the right to remove timber during the construction of the pipe line, but that Buckeye may also remove timber during maintenance of the pipe line. We agree. However, the record clearly shows that Buckeye was not doing any maintenance on the pipe line at the time of the clearing. Many of the cases relied upon by Buckeye held that it was permissible to remove trees from an easement, but they involved issues that arose when the easement grantee *sought to repair or do specific maintenance on a pipe line*. See, e.g., *Crane Hollow*, supra, (where the grantee wanted to repair and reopen a pipe line which had been capped several years earlier); *Rueckel v. Texas Eastern Transm. Corp.*, 3 Ohio App.3d at 156, 444 N.E.2d at 80 (the trees did not create a problem until November 1977, when Texas Eastern was engaged in the installation of a cathodic protection system designed to protect the pipe lines from corrosion.)

{¶34} We also note that the trial court prefaced its summary judgment decision with the statement that "It should be noted that *this case is not and should not be decided in a vacuum or in isolation*. Rather, we are a nation dependent upon oil. ***" (Emphasis added.) The trial court then referenced the Gulf of

Mexico BP oil spill and a recent spill into the Kalamazoo River, commenting that pipe line companies do not have an easy job of inspecting and maintaining pipe lines. However, for the purposes of summary judgment, Civ.R. 56(C) *does* require that the decision be made utilizing *only* the specific summary judgment evidence set forth in the rule. "No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, *and only from the evidence or stipulation*, that reasonable minds can come to but one conclusion ***." (Emphasis added.) Civ.R. 56(C). Buckeye *alluded* to the necessity of clearing the easement so that it could quickly and easily access its pipe line for maintenance or in the event of emergency. But again, there was no actual evidence in the record as to how often a company might need to access its pipe line (for either routine work or emergency purposes), how much of the pipe line would need to be accessed, whether the presence of vegetation on the right-of-way would actually cause a significant problem, and how large of an area was reasonably necessary to be cleared for those purposes.

{¶35} If there was evidence in the record that the vegetation on the easements was interfering with Buckeye's actual maintenance of the pipe line, Buckeye would have the right to remove the offending vegetation. However, we do not grant summary judgment on mere speculation. The burden of showing that

no genuine issue exists as to any material facts falls upon the moving party. Without uncontroverted evidence that it was necessary for Buckeye to clear all vegetation from all areas of the easements in order to "maintain" its pipe line, summary judgment was not proper. Appellants' first and second assignments of error are sustained.

{¶36} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and Cause Remanded*

**PRESTON, J., concurs.**

**/jnc**

**ROGERS, P.J., concurs separately.**

{¶37} I concur with the majority opinion, but write separately to stress my position that pipeline cases in Ohio have given too much latitude to the pipeline companies to unilaterally interpret and expand their "rights" under easements. The usual standards for interpretation of the contracts for easements should be applied in all such cases and not expanded without compensation simply because some new Federal regulation imposes new duties upon the companies. Nor should the right to clear trees and brush be expanded without compensation simply because some new invention, such as an airplane, makes inspection easier and/or

more economical if done in a manner not contemplated by those who executed the

contract. As I stated in my dissent in *Voisard v. Marathon*:

> **I am troubled by what I perceive to be a departure from general contract principles in pipeline cases. In general, these departures routinely favor pipeline companies and grant rights which were clearly not within the reasonable contemplation of property owners at the time the easements were signed. One of the cornerstones of contract law is to ascertain the intent of the parties at the time they entered into the contract. I do not believe that, at the time these parties entered into the agreement, either contemplated federal regulation of gas companies to the extent that they are regulated today. Nor do I believe the parties contemplated the use of aerial surveillance to achieve the regulatory mandates. On that issue, I would follow this court's holding in *Lakewood Homes, Inc. v. BP Oil, Inc.*, 3d Dist. No. 5-98-29, 1999 Ohio 851.**

*Voisard v. Marathon Ashland Pipeline, LLC.*, 3d Dist. No. 9-05-49, 2006-Ohio-6926, ¶12 (Rogers, J., Dissenting).