RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0371p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DONALD S. ANDREWS; JILL BEELER ANDREWS,
　　　　　　　　　*Plaintiffs-Appellants,*

　　　*v.*

COLUMBIA GAS TRANSMISSION CORPORATION,
　　　　　　　　　*Defendant-Appellee.*

No. 07-3632

>

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 05-00501—Mark R. Abel, Magistrate Judge.

Submitted: September 16, 2008

Decided and Filed: October 10, 2008

Before: GUY, BATCHELDER, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** John P. Lavelle, LAVELLE & ASSOCIATES, Athens, Ohio, Gregory D. Brunton, REMINGER & REMINGER CO. L.P.A., Columbus, Ohio, for Appellee. Donald S. Andrews, Jill Beeler Andrews, Granville, Ohio, pro se.

---

## OPINION

---

McKEAGUE, Circuit Judge. This diversity case involves what some consider to be a "[l]ocal David" standing up to an "out-of-state corporate Goliath."[1] Plaintiffs Donald S. Andrews and Jill Beeler Andrews appeal the district court's determination that defendant Columbia Gas Transmission Corporation ("Columbia Gas") is entitled to clear a fifty-foot right of way around each of its natural gas pipelines running through plaintiffs' property. For the reasons stated below, we **AFFIRM**.

---

[1] Press Release, Ohio Environmental Council, Local David stands up to out-of-state corporate Goliath (May 10, 2007), *available at* http://www.theoec.org/PDFs/press_releases/Mohican%20 Charities%20Press%20Release%205-10-07.pdf.

1

**I**

## A. Factual Background

The basic facts underlying this litigation are largely undisputed. In 1947, Ruby W. Davies owned the piece of land in Granville Township, Licking County, Ohio, where plaintiffs now reside. In January of 1947, she granted to The Ohio Fuel Gas Company ("Ohio Fuel"), and its successors and assigns, an easement[2] "to lay a pipe line over and through the premises hereinafter described, and to maintain, operate, repair, replace and remove same." JA 52. She also granted Ohio Fuel the right to "lay, maintain, operate, repair, replace and remove other lines of pipe at any points on said premises upon the payment of like consideration" and the right of "ingress and egress to and from the same" over and across the property. *Id.* Ohio Fuel agreed to "pay any damages which may arise to crops and fences from the laying, maintaining, operating and final removal of said pipe line." *Id.* The agreement further provided that "[t]he Grantor . . . may fully use and enjoy said premises except for the purpose hereinbefore granted to the Company." *Id.* The agreement did not specify the width of the easement. It was recorded in the official land records of Licking County, Ohio.

Pursuant to the agreement, Ohio Fuel installed two large high-pressure underground natural gas transmission pipelines through the property. The first, Line K-170, is sixteen inches in diameter and was installed in 1947. The second, Line K-205, is twenty-four inches in diameter and was installed in 1957. The two pipelines run roughly parallel to each other, approximately thirty feet apart. By virtue of a corporate merger, Columbia Gas succeeded to Ohio Fuel's interest in the right of way and has continued to operate and maintain the pipelines on the property.

The property has changed hands several times over the past half century. In the late 1960s, then-owner Jan Baltus built a house on it. He also planted pine trees on the hillside behind the house, both for aesthetics and to prevent the hillside from eroding. Unbeknownst to Baltus, he planted the trees within twenty-five feet of Line K-170. JA 490-91. In March 2000, plaintiffs bought the property with notice of the 1947 right of way agreement. By then, the pine trees had matured. According to plaintiffs, their decision to purchase the property was motivated in large part by the rural setting and the hillside landscaping.

Until 2004, Columbia Gas made no efforts to clear a right of way around its pipelines on plaintiffs' property. In June 2004, a work crew informed Donald Andrews that the location of the pipeline required them to remove a stand of the pine trees on his property. Thereafter, Columbia Gas claimed the right to remove the trees and to maintain a right of way totaling approximately eighty feet: twenty-five feet on each side of the centerline of each of the pipelines, and the thirty feet between the two pipelines. In a letter dated September 29, 2004, Columbia Gas informed plaintiffs that it would begin clearing its right of way. Another letter dated April 25, 2005 informed them that the company planned to enter the property and remove the trees.

## B. Procedural History

On April 28, 2005, plaintiffs, acting *pro se*, sued Columbia Gas in the Licking County Court of Common Pleas.[3] They sought declaratory and injunctive relief and damages in the event that Columbia Gas removed the trees. Columbia Gas timely removed the action to the United States District Court for the Southern District of Ohio based on diversity jurisdiction. It also filed a

---

[2]In line with decisions of Ohio state courts, we use the terms "easement" and "right of way" interchangeably.

[3]Although they appeared *pro se*, plaintiffs are both practicing attorneys. Donald Andrews specializes in taxation, and Jill Beeler Andrews is an Assistant State Public Defender, focusing on juvenile law and appellate issues.

counterclaim seeking declaratory and injunctive relief and damages for breach of contract. With the parties' consent, the case was referred to a magistrate judge for disposition under 28 U.S.C. § 636(c).

The magistrate judge entered a preliminary pretrial order on July 1, 2005. The deadline to amend pleadings was August 15, 2005. On January 23, 2006, plaintiffs filed a motion requesting additional time to serve a jury demand. The magistrate judge denied plaintiffs' request. Following discovery, Columbia Gas moved for summary judgment. The magistrate judge denied that motion as well, and the case proceeded to a bench trial.

After trial, the magistrate judge entered judgment in favor of Columbia Gas. He relied heavily on the testimony of two witnesses: Timothy Seibert and Paul Hollinger. Seibert was a long-time Columbia Gas employee and Operations Team Leader for the distribution area that included plaintiffs' property. He was responsible for overseeing the inspection and maintenance of the pipelines running through plaintiffs' property. Hollinger was an investigator for the Public Utilities Commission of Ohio ("PUCO"), the state agency responsible for overseeing natural gas transmission lines. Based on the testimony of Seibert and Hollinger, the magistrate judge concluded that a fifty-foot right of way for each pipeline was "necessary and convenient and consistent with the language of the 1947 Davies easement." JA 455. He also declined to apply the doctrines of laches, estoppel, or waiver, noting that those doctrines do not apply to expressly granted easements under Ohio law. Finally, the magistrate judge concluded that plaintiffs were not entitled to compensation for removal of the trees because the right of way agreement only provided recovery for damage to crops and fences. Plaintiffs filed a timely motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which the magistrate judge denied. This timely appeal followed.[4]

## II

Plaintiffs make four arguments on appeal. First, they contend that the magistrate judge incorrectly construed the right of way agreement as granting Columbia Gas a fifty-foot easement to operate and maintain each of its pipelines on plaintiffs' property. Second, they argue that the doctrines of laches, estoppel, and waiver, as well as the statute of limitations, precluded Columbia Gas from clearing the right of way forty years after the trees were planted. Third, they maintain that they are entitled to damages for the removed trees.[5] Finally, plaintiffs challenge the district court's denial of their motion for additional time to serve a jury demand.

## A. Applicable Law

Because Columbia Gas removed this matter to a federal district court sitting in Ohio, we must apply Ohio choice of law rules to determine the substantive law governing plaintiffs' state claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Ohio, an easement grant is a contract for purposes of its construction. *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978). Absent an effective choice of law provision, Ohio courts apply the law of

---

[4] In their notice of appeal, plaintiffs only appeal the April 6, 2007 denial of their Rule 59(e) motion to alter or amend the judgment. As a general matter, however, an "appeal from the denial of a Rule 59(e) motion is treated as an appeal from the underlying judgment itself." *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 833 (6th Cir. 1999); *see also Inge v. Rock Fin. Corp.*, 281 F.3d 613, 618 (6th Cir. 2002); *Peabody Coal Co. v. Local Union Nos. 1734, 1508 & 1548*, 484 F.2d 78, 81-82 (6th Cir. 1973).

[5] In their brief, plaintiffs indicate that the trees have been removed. Even if this renders plaintiffs' actions for injunctive and declaratory relief moot, the construction of the agreement and the width of the right of way are relevant to plaintiffs' claim for monetary damages.

the state with the most significant relationship to the contract.[6]  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188; *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 220 (Ohio 2001). Ohio clearly has the most significant relationship to the right of way agreement at issue here—it was the place of contracting, performance, and negotiation of the agreement, as well as the location of its subject matter and plaintiffs' residence.  Importantly, both parties have also assumed that Ohio law is controlling.  Ohio law therefore governs our interpretation of the right of way agreement.

The Federal Rules of Civil Procedure govern plaintiffs' jury demand claim.  *See Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965).

## B.  Standard of Review

We review a district court's determination of state law in diversity cases *de novo*.  *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991); *see also United States v. Dedman*, 527 F.3d 577, 584 (6th Cir. 2008).  In determining the substance of state law, we are bound by decisions of the state's highest court, unless that court would overrule its decisions on similar facts.  *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997).  Where the high court has not spoken, our task is to make the best prediction of what the state court would do if confronted with the question.  *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (2004).  State appellate court decisions are generally authoritative, "absent a strong showing that the state's highest court would decide the issue differently."  *Kurczi*, 113 F.3d at 1429.

We review a district court's legal conclusions following a bench trial *de novo*.  *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 938 (6th Cir. 1997).  We will not disturb a district court's findings of fact in a bench trial, however, unless they are clearly erroneous.  FED. R. CIV. P. 52(a)(6); *Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999).

## C.  Construction of the Right of Way Agreement

Under Ohio law, an easement is an interest in the land of another, created by prescription or express or implied grant, that entitles the owner of the easement to a limited use of the land in which the interest exists.  *Alban v. R.K. Co.*, 239 N.E.2d 22, 24 (Ohio 1968).  The owner of the land subject to an easement has the right to use the land in any manner not inconsistent with the easement, but has no right to interfere with or obstruct the reasonable and proper use of the easement.  *Rueckel v. Tex. E. Transmission Corp.*, 444 N.E.2d 77, 84 (Ohio Ct. App. 1981).  The owner of an easement has the right to remove objects within it that unreasonably interfere with or obstruct its reasonable and proper use.  *Id.* at 84.

Where the terms of an expressly granted easement are ambiguous, a court must determine its scope from the language of the grant, the circumstances surrounding the transaction, and what is reasonably necessary and convenient to serve the purposes for which the easement was granted.  *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 740 N.E.2d 328, 334 (Ohio Ct. App. 2000); *Roebuck v. Columbia Gas Transmission Corp.*, 386 N.E.2d 1363, 1368 (Ohio Ct. App. 1977).  Absent contrary evidence, "the court should presume that the parties contemplated that normal development would result in some changes in the mode of use of the easement, even if it were unlikely that the parties anticipated specific developmental changes."  *Crane Hollow*, 740 N.E.2d at 335.  "Acquiescence for a long time in a certain construction of a grant of an easement," however, "estops the assertion of a different construction."  *Roebuck*, 386 N.E.2d at 1368; *see also Crane*

---

[6]The following factors are relevant in determining the state with the most significant relationship:  the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2)(a)-(e).

*Hollow*, 740 N.E.2d at 335; *Munchmeyer v. Burfield*, No. 95CA7, 1996 WL 142579, at \*4 (Ohio Ct. App. Mar. 26, 1996).

Because an easement grant is treated as a contract under Ohio law, *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978), its interpretation is a question of law subject to *de novo* review, *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 931 (6th Cir. 1998). But "when the intended dimensions of an easement are not expressed in the grant itself, determining the dimensions becomes largely a question of fact." *Crane Hollow*, 740 N.E.2d at 334; *Voisard v. Marathon Ashland Pipeline, LLC*, No. 9-05-49, 2006 WL 3803868, at \*2 (Ohio Ct. App. Dec. 28, 2006). This court has also acknowledged that such cases are "particularly fact-sensitive." *Columbia Gas Transmission Corp. v. Zeigler*, Nos. 02-3164, 02-3220, 2003 WL 22734806, at \*3 (6th Cir. Nov. 18, 2003) (upholding 200-foot radius setback pursuant to easement agreement because district court's factual findings were not clearly erroneous). As such, we review the magistrate judge's factual findings, as the basis for his determination of the easement's width, for clear error.[7]

### 1. Subsequent Use and Acquiescence

Plaintiffs first argue that the scope of the right of way on their property has already been determined by subsequent use and acquiescence. They rely on *Ashland Pipe Line Co. v. Lett*, No. CA-942, 1990 WL 53505, at \*4 (Ohio Ct. App. Apr. 11, 1990), which held that a gas company was not entitled to a fifty-foot right of way because it had only cleared a total of twenty-five feet in the past and because there were mature trees well within the claimed fifty feet. Plaintiffs also cite to *Crane Hollow*, where the Ohio court approved a fifty-foot right of way in part because the gas company had a long history of use and maintenance of that area around the pipeline. 740 N.E.2d at 336. Plaintiffs maintain that Columbia Gas never cleared any area within its claimed right of way, and never objected when Jan Baltus planted the pine trees in the late 1960s.

Neither *Lett* nor *Crane Hollow* stands for the proposition that a company's lack of action, standing alone, estops it from arguing that a certain width is reasonably necessary and convenient. Instead, in both cases a company's affirmative acts were a consideration when determining the easement's width. *See Crane Hollow*, 740 N.E.2d at 336; *Lett*, 1990 WL 52505, at \*2. If Columbia Gas had consistently cleared only ten feet on each side of its pipelines, plaintiffs' argument would have more force. But the fact that the company did nothing, without more, is not fatal. Although the terms of an easement may be determined by subsequent use and acquiescence, they can be determined in different ways as well.

Further, Columbia Gas did not acquiesce to the trees. In *Lett*, the court stated that "[t]he intention of the parties at the time of the conveyance is the primary consideration in determining the status of an easement." 1990 WL 53505, at \*3 (citing *Sieferd v. Stambor*, 214 N.E.2d 106 (Ohio 1966)); *see also Munchmeyer*, 1996 WL 142579, at \*3 ("[C]ourts must be careful to determine the location and dimensions of the easement on the basis of the circumstances at the time the easement was created."). Here, the magistrate judge found that there were no trees on plaintiffs' property at the time of the grant in 1947, except for a few cherry trees located away from where the pipelines were eventually laid. Jan Baltus testified that the hillside was empty when he planted the pines, and plaintiffs offered no evidence that there were trees in that area in 1947. Because the magistrate judge's finding that there were no trees on the hillside at the time of the agreement was not clearly

---

[7]Plaintiffs argue that we should ask whether the magistrate judge's conclusions were against the manifest weight of the evidence. Although the "manifest weight" standard would be appropriate under Ohio law in an appeal to an Ohio appellate court, *see Columbia Gas Transmission Corp. v. Bennett*, 594 N.E.2d 1, 5 (Ohio Ct. App. 1990), federal law governs our standard of review in diversity cases, *see Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000).

erroneous, it was proper for him to conclude that the conduct of Columbia Gas after the trees were planted did not evidence the original intent of the parties.

Finally, plaintiffs argue that Columbia Gas acquiesced by allowing trees near its pipelines on other properties. If the original intent of the parties is the primary inquiry, however, only the conduct of the parties regarding the particular property at issue is relevant. Indeed, one Ohio court has stated that "[t]he fact that [the gas company] may or may not have enforced its easement to its fullest width elsewhere has absolutely no bearing at all on whether it may enforce its easement to its fullest width on the [landowners'] property." *Columbia Gas Transmission Corp. v. Large*, 619 N.E.2d 1215, 1215 (Ohio C.P. 1992).

### 2. Reasonably Necessary and Convenient

After trial, the magistrate judge noted that there was conflicting evidence regarding whether the pipelines could be safely maintained with less than a fifty-foot clearing. Relying on testimony by Timothy Seibert[8] and Paul Hollinger, he ultimately concluded that a fifty-foot easement was reasonably necessary and convenient for the inspection, operation, and maintenance of each of the pipelines. The factual findings upon which he based that conclusion were not clearly erroneous.

Before turning to the magistrate judge's reasoning, a few points are worth noting at the outset. First, although each easement case is factually unique, almost every court to construe an easement with similar language as the one at issue here has concluded that a twenty-five foot right of way on both sides of the pipeline was reasonably necessary and convenient. *See Crane Hollow*, 740 N.E.2d at 335; *Columbia Gas Transmission Corp. v. Bennett*, 594 N.E.2d 1, 8 (Ohio Ct. App. 1990); *Columbia Gas Transmission Corp. v. Adams*, 646 N.E.2d 923, 926 (Ohio C.P. 1994); *Large*, 619 N.E.2d at 1215; *see also Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 544 (3d Cir. 1995); *Columbia Gas Transmission Corp. v. Davis*, 33 F. Supp. 2d 640, 643 (S.D. Ohio 1998). Second, Columbia Gas's business rationale for waiting until 2004 to begin clearing the pipelines is irrelevant to our review of the magistrate judge's determination that a fifty-foot right of way for each pipeline was reasonably necessary and convenient.[9] If the agreement granted such a right of way, Columbia Gas was not obligated to give specific reasons for acting within its rights. And it is also beside the point to argue that federal regulations do not require natural gas companies to clear rights of way around their pipelines. Assuming that to be true, the regulations do not prohibit gas companies from clearing rights of way. Moreover, although federal law may be helpful in construing certain ambiguous easements, *see Swango Homes v. Columbia Gas Transmission Corp.*, 806 F. Supp. 180, 186 (S.D. Ohio 1992) (holding that the grant of an easement implies the right to maintain it in accordance with federal regulations), the rights granted in an easement ultimately

---

[8]Plaintiffs make a passing reference to the argument that Seibert was not qualified as an "expert." Yet several federal courts, including this court, have permitted and relied upon testimony by long-time gas company employees in determining whether a pipeline right of way was reasonably necessary and convenient. *See Zeigler*, 2003 WL 22734806, at *2; *Columbia Gas Transmission Corp. v. Davis*, 33 F. Supp. 2d 640, 642-43 (S.D. Ohio 1998). As one Ohio court noted:

> While appellee's witnesses were all company employees, they, in our view, were not presented to give expert testimony, but rather were lay persons who had actual knowledge of the company policies, regulations, procedures, and reasons for such policies. The factual testimony which was admitted was within the perception and special knowledge of each of the witnesses and helped to explain why the pipeline company policy required removal of the trees within the easement right-of-way.

*Panhandle E. Pipeline Co. v. Howey*, 2001 WL 1155838, at *1 (Ohio Ct. App. Sept. 28, 2001).

[9]Plaintiffs, for example, argue that a 2004 PUCO report by Paul Hollinger did not spur Columbia Gas's efforts to begin clearing the trees, as the company claimed it did. They also argue that Columbia Gas was disingenuous when it claimed that certain "world events" prompted the company's attempts to clear its rights of way.

emanate from a private agreement, *see Southgate Dev. Corp. v. Columbia Gas Transmission Corp.*, No. 2343, 1976 WL 188659, at *2 (Ohio Ct. App. Jan. 14, 1976) ("Southgate's claims are based upon a private easement contract founded upon and deriving its force from state law."). With those initial observations, the magistrate judge's reasons in support of his conclusions, as well as the parties' arguments on appeal, are addressed in turn below.

### a. Pipeline Inspections

The difficulties Columbia Gas might face in conducting pipeline inspections was a primary ground for the magistrate judge's conclusion that a fifty-foot right of way was reasonably necessary and convenient for each of the pipelines on plaintiffs' property. At trial, Seibert gave a detailed explanation of the methods Columbia Gas uses to inspect its pipelines.[10] The first method is visual inspection, which includes so-called "walk-overs" and "fly-overs." Visual inspections detect encroachments, equipment near the pipeline, exposure of the pipeline, third party activity, construction activity, and leakages. Columbia Gas conducts approximately five to six aerial inspections of the K-170 and K-205 lines each year. Although the company also conducts ground inspections, the primary method of patrol is aerial. Seibert testified that aerial inspections have become the standard method of inspection in the industry. With approximately 12,000 miles of pipeline, he testified that it would not be feasible for Columbia Gas to comply with its regulatory obligations if it only conducted ground inspections. Hollinger confirmed that aerial inspection is the most effective means of inspecting pipeline and that it is a very common practice. He also stated that aerial patrol is the most economically viable way to inspect thousands of miles of pipelines.

Because plaintiffs' property is located in a "high consequence area,"[11] Columbia Gas also conducts "smart pigging" and "close interval surveys" on the K-170 and K-205 lines to detect any internal anomalies. In a smart pig inspection, a device inserted into the pipeline electronically checks for anomalies, such as cracks or thinning of the pipeline wall. In a close interval survey, an inspector walks the pipeline with a device that measures the electronic current running through the pipeline. That current, called cathodic protection, protects the pipeline from deterioration and corrosion.

At trial, Columbia Gas offered evidence that the trees hindered the company's ability to conduct both aerial and close interval pipeline inspections. According to Seibert, the presence of trees within the right of way interfered with aerial inspections. He testified that employees would not be able to see the pipeline or the area around it if trees were there. Hollinger agreed that trees within twenty-five feet of the center of a pipeline could hinder a company's ability to conduct aerial patrol. Seibert testified that the trees directly above Line K-170 also hindered the company's ability to conduct close interval surveys. Although prior close interval surveys on plaintiffs' property had met company criteria, inspectors had gone around the trees to obtain a reading. The most accurate reading, however, could only be taken directly over the pipeline. Hollinger also agreed that large, mature trees could interfere with a close interval survey.

---

[10] As a natural gas pipeline operator, Columbia Gas is subject to regulation by the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act, 15 U.S.C. §§ 717 *et seq.*, and by the United States Department of Transportation ("USDOT") under the Natural Gas Pipeline Safety Act, 49 U.S.C. §§ 60101 *et seq.* Federal regulations require pipeline operators to develop and follow an "integrity management program." 49 C.F.R. § 192.907(a). The program must contain a plan for the inspection and remediation of covered pipelines. 49 C.F.R. § 192.911. According to Seibert, Lines K-170 and K-205 are both covered pipelines and are part of Columbia Gas's integrity management program.

[11] If an operator identifies an area as a "high consequence area," it must take additional measures to prevent and mitigate the consequences of a pipeline failure. 49 C.F.R. § 192.935.

On appeal, plaintiffs argue that Columbia Gas has inspected its pipelines for over thirty-five years without violating federal law or its own internal criteria. They also contend that there are alternatives to aerial inspection that would not have required removing the trees. Yet both Seibert and Hollinger explained why the trees made it difficult for the company to conduct inspections even in the absence of federal or internal company violations. And both witnesses testified that aerial inspections were more convenient and cost-effective compared to the alternatives. Seibert and Hollinger provided sufficient evidence to justify the conclusion that trees within the claimed right of way hindered the company's ability to inspect its pipelines. It was not clearly erroneous for the magistrate judge to rely on this evidence in defining the scope of the easement.

### b. Emergency Response and Excavation

The magistrate judge also found that the trees would interfere with Columbia Gas's ability to excavate the pipeline in the event of an anomalous inspection or an emergency such as a leak or rupture. If a smart pig, for example, detects an eighty percent loss in wall thickness, Columbia Gas is required to excavate the pipeline and inspect, repair, and/or replace the pipe within five days. Seibert testified that the presence of large trees within twenty-five feet of the pipeline would hinder the company's ability to excavate within that time. The company, he said, would have to first remove the trees and then remove the debris before even starting to excavate. Hollinger agreed that large, mature trees could hinder the company's ability to access a pipeline if required to do so by the results of a smart pigging test.

Moreover, if an inspection indicates a pipeline leak, in certain circumstances Columbia Gas is required to excavate it immediately. Seibert stated that trees would significantly impact the company's ability to quickly make the area safe and excavate and repair the pipeline. He discussed federal guidelines regarding trenching and shoring, should an excavation of the pipeline prove necessary. He also testified that a twenty-five foot right of way on each side of the pipeline was necessary to allow better ingress and egress for large equipment. Further, Hollinger testified that twenty-five feet on either side of the pipeline would be necessary for immediate excavation. In addition to this testimony, Columbia Gas submitted a detailed drawing of an excavation site.[12] It illustrated the depth and width of a typical trench, as well as the space typically taken up by mandatory setbacks, the spoil pile (the dirt dug up to create the trench), the large equipment needed to excavate, and repairman's and swamper's trucks. Based upon this evidence, the magistrate judge concluded that a fifty-foot right of way for each pipeline was reasonably necessary and convenient "so that emergency responders would not have to waste valuable time clearing trees." JA 452.

Plaintiffs argue that Columbia Gas has safely maintained its pipelines for decades without removing the trees and that if an emergency ever arises, it can remove the trees quickly enough at that time. Seibert admitted that the pipelines had been safely maintained with the trees in place and that Columbia Gas was prepared to respond in case of an emergency on plaintiffs' property. The magistrate judge recognized this as well, noting that "there are many circumstances under which Columbia would have time to conveniently remove the trees before beginning to excavate." JA 452. However, the court also reasoned that there were some circumstances in which the additional time to remove the trees could impose a substantial hardship on customers who would be without natural gas service during the excavation. More importantly, the court noted, it was possible that the delay to remove the trees could unnecessarily jeopardize public safety if there was a leak or rupture. The court's concerns were justifiable. *See, e.g.*, *Adams*, 646 N.E.2d at 925 (holding that "[t]he public interest requires that Columbia be able to repair and service natural gas pipelines as quickly, safely, and reasonably as possible"); *Davis*, 33 F. Supp. 2d at 643 (holding that a fifty-foot right of way was

---

[12]Plaintiffs argue that the drawing is inaccurate and does not represent their property, but both Seibert and Hollinger acknowledged that it was an accurate depiction of a typical excavation site.

reasonable given the court's concern for the safety of the landowners, the gas company's employees, and the public). There is ample support in the record for its conclusion that a cleared right of way was reasonably necessary to ensure a safe, timely, and efficient excavation.

### c. Notice to Third Parties

Another justification for the magistrate judge's conclusion was that a cleared right of way gives contractors and other third parties notice that there is a high pressure gas transmission line in the area, which is important to maintaining the safety of the pipeline. On appeal, plaintiffs contend that Columbia Gas produced no evidence to support this contention. But as Columbia Gas points out, Seibert's testimony directly supports this basis for the court's holding. According to Seibert, it was important to have a cleared right of way for third parties to identify where the pipeline might be located. He stated that the greatest threat to pipelines was damage from third parties.

Plaintiffs also argue that a cleared right of way on their property is unnecessary because a third party would receive notice of the pipeline from the orange markers warning its presence. Further, they argue that providing notice to construction crews is unnecessary because the location of their hillside prevents construction activity near the pipeline. Nonetheless, the record supports the magistrate judge's concerns regarding notice to third parties. Even in light of plaintiffs' arguments, he could have still reasonably concluded that a cleared right of way was the most effective means of notifying any potential third parties on plaintiffs' property. Although the evidence may have permitted him to reach a different conclusion, our task is only to determine whether the one he did make was clearly erroneous. On the evidence before him, it was not.

### d. Industry Standard

Finally, the magistrate judge considered evidence that a fifty-foot right of way is standard in the gas pipeline industry. Seibert said that it had been the standard at least from the beginning of his seventeen-year career at Columbia Gas. He also testified that other pipeline transmission companies followed the fifty-foot standard. Hollinger confirmed that it is common industry practice to clear and maintain twenty-five feet on each side of a pipeline.

Plaintiffs argue that the industry standard does not bind them because they are not members of the natural gas pipeline industry. *See* 92 OHIO JUR. 3d *Usages and Customs; Course of Dealing* § 25 (2008). Although the industry standard may not be controlling in its own right, the fact remains that it is the standard for a reason: to conduct effective inspections and excavations and to provide notice to third parties. Ultimately, it lends even more weight to the magistrate judge's conclusion. *See Adams*, 646 N.E.2d at 925 (acknowledging that it is "standard practice . . . to keep at least twenty-five feet on each side of the pipeline free and clear of encroaches").

### e. Conclusion

Given the purposes of this gas pipeline easement, as well as the evidence before the magistrate judge, we cannot say that it was clear error to conclude that a fifty-foot right of way for each pipeline was reasonably necessary and convenient.

## D. Plaintiffs' Remaining Theories for Relief

Even if a fifty-foot easement is reasonably necessary and convenient, plaintiffs argue, the company's over-forty-year delay precluded it from clearing the right of way. Accordingly, they maintain that the doctrines of laches, estoppel, waiver, and the statute of limitations bar Columbia Gas from claiming a right of way. Because these issues involve the determination and application of Ohio law, we review the magistrate judge's conclusions *de novo*.

### 1. Laches, Estoppel, and Waiver

The magistrate judge properly concluded that Ohio courts do not apply the doctrines of laches and estoppel to an expressly granted easement. "[E]quity does not acknowledge the extinguishment of [an expressly granted] easement by recourse to estoppel and laches." *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, No. 2003-L-192, 2005 WL 1538259, at *7 (Ohio Ct. App. June 30, 2005) (citing *Zimmerman v. Cindle*, 548 N.E.2d 1315 (Ohio Ct. App. 1998) (holding easement obtained by prescription may be subject to laches and estoppel)); *see also Columbia Gas Transmission Corp. v. Ally*, No. 1:04 CV 1338, 2006 WL 2505902, at *8 (N.D. Ohio Aug. 28, 2006) (citing *Lone Star* in holding that "estoppel may preclude the enforcement only of an easement created by prescription, not of a granted and recorded easement"). Plaintiffs argue that the *Lone Star* court incorrectly interpreted the holding of *Zimmerman*. As the decision of an Ohio appellate court, however, *Lone Star* is authoritative, and plaintiffs have offered no compelling reason why the Ohio Supreme Court would disagree with its holding. Although a recent Third Circuit decision suggests that laches may apply to an expressly granted easement, that court was applying New Jersey, not Ohio, law. *See Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 214 (3d Cir. 2007). And although plaintiffs argue they had no notice of the width of the easement, that is the harsh reality resulting from the term's omission in the original grant. Forced to construe the agreement, the magistrate judge determined that it expressly granted a fifty-foot right of way for each pipeline. Thus, neither laches nor estoppel barred Columbia Gas's exercise of its expressly granted rights.

In Ohio, a "waiver is something akin to estoppel." *City of N. Olmsted v. Eliza Jennings, Inc.*, 631 N.E.2d 1130, 1134 (Ohio Ct. App. 1993). As such, we can assume that it too does not apply to an expressly granted easement. Even if it does, waiver is the "voluntary relinquishment of a known right." *State ex rel. Ryan v. State Teachers Ret. Sys.*, 643 N.E.2d 1122, 1127 (Ohio 1994). The party seeking to prove waiver must show a "clear, unequivocal, decisive act by the other party of such a purpose it amounts to an estoppel on that party's part." *City of N. Olmsted*, 631 N.E.2d at 1134. "Mere silence will not amount to waiver where one is not bound to speak." *List & Son Co. v. Chase*, 88 N.E. 120, 122 (Ohio 1909). Here, plaintiffs allege that Columbia Gas failed to protest the trees; this is tantamount to alleging mere silence and is therefore insufficient to establish waiver under Ohio law.[13]

### 2. Statute of Limitations

Finally, plaintiffs claim that the statute of limitations has expired for Columbia Gas to bring a breach of contract claim. They argue that the fifteen-year statutory period began to run on the day the trees were planted in the late 1960s, and that Columbia Gas was therefore precluded from claiming that the presence of the trees breached the right of way agreement. Columbia Gas argues that plaintiffs never raised this issue below and therefore did not preserve it for appeal. That is incorrect, as plaintiffs raised it in their trial brief. Columbia Gas also argues that plaintiffs did not begin to breach the agreement until they refused to grant the company access to remove the trees. We need not address that argument, however. The magistrate judge had authority to determine the parties' rights under the agreement because plaintiffs themselves brought that issue before the court. Even if the statute of limitations had run on Columbia Gas's breach of contract claim, the magistrate

---

[13]Plaintiffs argue that Columbia Gas was "bound to speak" because the trees were on their property for more than twenty-one years, the statutory period for adverse possession in Ohio. *See Ally*, 2006 WL 2505902, at *7. In *Ally*, the court implied that a property owner's adverse possession of a gas company's setback could create a legal obligation for the company to speak for purposes of waiver analysis. *Id.* at *8. Even if that is true, plaintiffs have failed to adequately argue that they meet the stringent requirements for adverse possession under Ohio law. *See Grace v. Koch*, 81 Ohio St. 3d 577, 580-81 (Ohio 1998) (holding that "a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use" for the statutory period).

judge never awarded damages to the company for any breach.  As such, the applicability of the statute of limitations to Columbia Gas's counterclaim does not affect the outcome of this case.

## E.  Damages for the Cleared Trees

Plaintiffs also challenge the magistrate judge's determination that they are not entitled to damages for removal of the trees.  Because the trees were inconsistent with the easement rights of Columbia Gas, the company was authorized to remove them.  *See Rueckel v. Tex. E. Transmission Corp.*, 444 N.E.2d 77, 84 (Ohio Ct. App. 1981); *see also Swango Homes, Inc. v. Columbia Gas Transmission Corp.*, 806 F. Supp. 180, 186 (S.D. Ohio 1992).  In *Rueckel*, the Ohio court stated that the owner of an easement has the right to remove objects that unreasonably interfere with or obstruct its reasonable and proper use:

> [I]f the plaintiffs plant trees on their property which obstruct, unreasonably burden and interfere with the exercise of the easement, including the right to engage in appropriate pipeline maintenance operations, then the growing of such trees is inconsistent with the easement rights of defendants and is prohibited under the rights-of-way grants and plaintiffs are not entitled to compensation for the trees that are removed.

444 N.E.2d at 83.  Plaintiffs argue that the trees did not burden or interfere with Columbia Gas's use of the right of way.  But whether the trees were such an interference is precisely what the magistrate judge considered when he determined the reasonably necessary and convenient scope of the right of way.  Thus, plaintiffs are only entitled to damages if the terms of the agreement so provide.

The magistrate judge denied damages under the agreement because it only provided that the company would pay damages "which may arise to crops and fences."  JA 52-53.  Under the maxim *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another—he held that such language excluded any obligation to pay damages for timber.  Because this claim involves the application of Ohio contract law, we review the magistrate judge's interpretation of the agreement *de novo*.

The magistrate judge did not err in holding that the plain meaning of the agreement precluded damages for the cleared trees.  In Ohio, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."  *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 148 (Ohio 1978).  Here, the agreement provided for damages to crops and fences, not trees.  The plain and ordinary meaning of these words is clear.  Further, there is no indication that the parties otherwise intended compensation for damage to trees.  At least one Ohio court has rejected damages for the cutting of trees under a clause with almost identical language.  *See Voisard v. Marathon Ashland Pipe Line, LLC*, No. 9-05-49, 2006 WL 3803868, at *2 (Ohio Ct. App. 2006).  Accordingly, plaintiffs are not entitled to compensation for the removed trees.

## F.  Jury Demand

Finally, plaintiffs argue that the magistrate judge erred when he denied their motion for additional time in which to demand a jury.  A party must demand a jury trial in writing "no later than 10 days after the last pleading directed to the issue is served."  FED. R. CIV. P. 38(b).  "A party waives a jury trial unless its demand is properly served and filed."  FED. R. CIV. P. 38(d).  However, "a court may, on motion, order a jury trial on any issue for which a jury might have been demanded."  FED. R. CIV. P. 39(b).  A district court has broad discretion in deciding whether to grant a Rule 39(b) motion.  *Moody v. Pepsi-Cola Metro. Bottling Co., Inc.*, 915 F.2d 201, 207 (6th Cir. 1990); *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 205 (6th Cir. 1986).  Generally, a district court

will not abuse its discretion in denying a Rule 39(b) motion if the only justification offered for failure to demand a jury trial is mere inadvertence. *Misco*, 784 F.2d at 205. However, special consideration may be warranted in cases where "the party who failed to file a timely jury demand has been hailed into federal court against his will, or is proceeding pro se." *Id.* at 205 n.8 (internal citations omitted). Here, plaintiffs requested a jury trial over five months after the date to amend the pleadings, and over six months after Columbia Gas filed its amended answer. They argue that they relied on the magistrate judge's preliminary pretrial order, which stated that "[t]he case will be individually calendared for jury trial." JA 89. They also argue that Columbia Gas would not have been prejudiced had the court granted its motion to demand a jury trial.

The magistrate judge did not abuse his discretion in denying plaintiffs' jury demand. Although he noted that plaintiffs were proceeding *pro se*, he also acknowledged that they are practicing attorneys. It was therefore not an abuse of discretion to deny them special consideration on the basis of their *pro se* status. The magistrate judge also reasoned that the pretrial order should have put plaintiffs on notice that they had *not* filed a jury demand. Ultimately, plaintiffs' failure to demand a jury trial smacks of mere inadvertence. Because we believe the magistrate judge did not abuse his broad discretion in this matter, we affirm his decision to deny additional time to demand a jury trial.

### III

For the foregoing reasons, we **AFFIRM** the judgment in favor of Columbia Gas.