NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0538n.06

No. 09-1601

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 20, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| FREDERICK WILLECKE and TARA JONES WILLECKE, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| BRENT KOZEL and ACCURATE APPRAISALS, | ) | |
| | ) | O P I N I O N |
| Defendants-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN R. TOTH and JODY L. TOTH, | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: NORRIS, MOORE, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Frederick Willecke and Tara Jones Willecke sued Brent

Kozel and Accurate Appraisals after discovering that a home they purchased at 1367 Holland Street,

Birmingham, Michigan (the "Birmingham property") was not completed and was worth less than

they had believed when they purchased it. Kozel, while working for Accurate Appraisals, had

prepared an appraisal in June 2005 concerning the Birmingham property, which contained several

inconsistencies. We find that there is no genuine issue of material fact that the June appraisal was

commissioned by and prepared for MortgageIT, not the Willeckes, and that it contained the Uniform

Standards of Professional Appraisal Practice ("USPAP") language limiting its use to MortgageIT.

Accordingly, the Defendants did not owe the Willeckes a duty of care stemming from the appraisal.

Therefore, we **AFFIRM** the district court's decision.

## I.  BACKGROUND

In 1995, John Toth purchased the Birmingham property.  Toth decided to raze the existing house and construct a new one.  To construct the property, Toth obtained financing from Member Mortgage Services, which required that Accurate Appraisals perform periodic appraisals of the property based on Toth's plans.  As he worked on the Birmingham property, Toth's financial situation deteriorated.  Ultimately, Toth again tried to refinance, this time through MortgageIT, which put him in contact with Richard Dalberth, an employee of MortgageIT in their New York office.  Another appraisal was commissioned and performed by Kozel for MortgageIT on February 17, 2005, which valued the Property at $595,000 and misstated some of the property information.[1]

In the spring of 2006, Dalberth informed Mr. Willecke, his co-worker at MortgageIT, about the Birmingham property as a potential investment.  After Dalberth showed the Willeckes some preliminary figures regarding the Birmingham Property, they considered purchasing it.  Another appraisal was performed by Kozel in June 2005.  The June 20, 2005 appraisal gave a $650,000 value to the Birmingham property.  Ultimately, it appears that Kozel inaccurately described the property and significantly overvalued it by using inappropriate comparables.[2]  After reviewing the June 2005

---

[1]The Willeckes did not argue that they relied on the February 2005 appraisal.

[2]According to Mr. Willecke, Dalberth represented that the Birmingham property had been completed.

appraisal, the Willeckes decided to purchase the Birmingham property.[3] Ms. Willecke executed a contract for sale of the Birmingham property on July 19, 2005. In January 2006, Mr. Willecke traveled to Michigan and discovered that the property was incomplete during a walkthrough with Kozel and an attorney, David Costa.

The Willeckes filed a nine-count complaint naming John and Judy Toth, Bret Kozel, and Accurate Appraisals. Specific to Kozel and Accurate Appraisals, the Willeckes alleged fraud, negligent misrepresentation, conspiracy to commit fraud, and professional negligence.[4] After the close of discovery, Kozel and Accurate Appraisals moved for summary judgment, which was granted on August 23, 2007.

## II. ANALYSIS

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When reviewing a motion for summary judgment, we view all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Moldowan v. City of Warren*, 578 F.3d 351, 374

---

[3]Prior to closing on the home, the Willeckes did not go to Michigan, or have the property examined or evaluated by anyone; instead, they claim to have relied solely on the June 2005 appraisal and Dalberth's representations.

[4]The Willeckes prevailed against the Toths, who filed a separate claim of appeal.

No. 09-1601
*Willecke v. Kozel*

(6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (alterations in *Moldowan*).

In diversity actions, "[t]he availability of summary judgment . . . is governed by the federal standard . . . rather than by state law." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citation omitted). We review de novo a district court's determination of state law. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008).

### 1. Accurate Appraisals sent out the 12-page appraisal with the USPAP addendum

The Willeckes claim that Accurate Appraisals originally sent MortgageIT a 3-page June appraisal (without the USPAP limiting language), instead of the more complete 12-page June appraisal that they attached to their complaint.[5] However, the evidence clearly shows that the 12-page appraisal was sent out in June.

The 12-page appraisal is dated June 20, 2005.[6] Furthermore, the Willeckes initially attached the 12-page version to their complaint, but did not include the 3-page version.[7] This both shows that

---

[5]There are a few minor difference, but otherwise the three pages in the 3-page version are substantively included in the 12-page version.

[6]Based on the different dates on which they were filed with the district court, there are theoretically "two" 12-page appraisals: the first is the one attached to the Willeckes' complaint (filed on April 7, 2006) and the second was filed with the district court on July 1, 2007 (this filing date does not show when the report was created or sent). These two 12-page appraisals are identical, both dated June 20, 2005, and nowhere on either document is there a suggestion that they were created or sent at a later date (like July 2005); therefore, there is only one 12-page version of the appraisal and it is dated June 20, 2005.

[7]Evidently, the 3-page version was produced by Accurate Appraisals during discovery. However, the fact that the 3-page version was produced by Accurate Appraisals does not show that it was sent out by Accurate Appraisals, or that the Willeckes actually received or considered it before they purchased the Birmingham property.

-4-

the 12-page version was sent out before discovery and indicates that the Willeckes did not have or recollect a separate 3-page version, which they did not attach to their complaint. Furthermore, even assuming the Willeckes were furnished with it, the 3-page version clearly states on the first page: "Please read the attached limiting conditions, certification and USPAP compliance addendum." (R. 60-11 Ex. I Appraisal at 2.) Similarly, when Dalberth faxed over his request for an appraisal, which led to the June appraisal, he specifically instructed Accurate Appraisals that the new appraisal be "forward[ed] . . . with invoice for payment at closing and license." (R. 52-3 Appraisal at 2.) The 12-page version contains an invoice for payment; the 3-page version does not.

To try to create a genuine issue of material fact concerning whether the 3-page or the 12-page version was the one sent out by Defendants and that the Willeckes relied on, the Willeckes argue that the 3-page version was sent out in June but the 12-page version was not sent until July. However, they do not point to evidence that actually supports this proposition. Initially, they cite to a portion of Mr. Willecke's deposition testimony; however, in context, this language is clearly referring to the contract the Toths and Ms. Willecke signed at the closing, and not to the appraisal. (R. 60 F. Willecke Dep. at 144-45.) Consequently, it does not help determine when the appraisal was sent out. The Willeckes also cite to defense counsel's statement that the top of the 12-page version "dates it at July 20th." (R. 60 F. Willecke Dep. at 51-52.) However, this is a simple misstatement. An examination of the actual appraisal document does not show any reference to July 20th, on either the last page or any other page. (R. 60 Ex. J Appraisal; R.1 Complaint.)[8] Instead, all the relevant

---

[8]The Willeckes also state in their brief that "this 'revised' June 2005 appraisal – dated July 19, 2009 – . . . ." (Appellant Br. at 32.) Initially, they appear to be referring to the "revised" appraisal provided in Exhibit J, which is a part of Record Entry 60. This entry does not mention July

references in the 12-page version are to June 20, 2005, the same day the Willeckes claim the 3-page version was sent.  (R. 60 Ex. J Appraisal; R.1 Complaint.)

Finally, the Willeckes point out that they are not sure if they received the 12-page version. (R. 60 T. Willecke Dep. at 71-72 (noting that her signature is not on the document and that she did not see any document where she "agreed to any of the limitation conditions which Mr. Kozel purportedly provided in this particular document"); R. 60 F. Willecke Dep. at 91-93 ("Because if there's any part of an appraisal that's inaccurate, that raises questions to me to the entire document. As now, you know, I think about it, I don't understand why this is dated in July.  To be honest with you, I don't know if this has been altered.  I can't tell you with any certainty that this is the same document that I looked at.").)  Ms. Willecke's signature would not have been on any part of the appraisal since, as discussed below, she did not request or commission it from Defendants, and it was not done for her.  Concerning Mr. Willecke's testimony, there is no evidence that the appraisal is actually dated in July and the fact that he was not sure if this was the same document that he looked at, based on a date distinction that does not actually appear to exist, does not provide evidence as to what document he looked at.  It certainly does not support his contention that he only looked at a 3-page version, especially when confronted with the objective evidence indicating that

---

19th; however, even if it did, a dating of July 19, 2009 would be irrelevant since that is a date years after the Willeckes used the appraisal to make their purchase (in 2005), and years after the Willeckes filed their suit (in 2006), a suit in which they attached an identical copy of the 12-page appraisal (dated June 20, 2005) to their complaint.

The Willeckes also point out that the 12-page version does not include Bates-numbers, unlike the other appraisals produced by Accurate Appraisals.  However, that does not show that it was not sent out, or when it was sent out.

the 12-page version was the appraisal sent out by Defendants. Indeed, the Willeckes do not actually testify that the 3-page version was the appraisal that they received.

In short, the evidence shows that Defendants sent out the 12-page June appraisal that was attached to the Willeckes' complaint and that this is the June appraisal that the Willeckes relied on. The Willeckes do not point to any evidence that creates a genuine issue of material fact.

### 2. *The appraisal was commissioned by and done for MortgageIT*

Michigan contract law states that: "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006) (citation omitted). In this case, the objective evidence in the factual record undisputedly shows that MortgageIT commissioned the appraisal, and that the appraisal was done for MortgageIT. Dalberth, an employee of MortgageIT, sent the fax requesting the June appraisal. (R. 52-2 at 2-3.) The request was sent on MortgageIT letterhead, which provided contact information for MortgageIT, and it specifically instructed that the new appraisal be "forward[ed]" to Dalberth "with invoice for payment at closing and license." (*Id.*) Similarly, the "Appraisal Request" sent with the fax requesting the appraisal lists MortgageIT as the "Requesting Company" and "Richard Dalberth" as the requestor. (*Id.*) In contrast, the borrower is listed as Tara Willecke. The request lists "6/14/2005" as the request date and "7/18/2005" as the estimated close date. (*Id.*) Under comments it states: "Please change to purchase by Tara Willecke with purchase price of $650,000. Please maximize the valuation on this updated appraisal. Contact me with any major deviation from value." (*Id.*) Similarly, the appraisal lists MortgageIT as the "Lender/Client," provides MortgageIT's address, and

lists Willecke as the "Borrower." (R.60 Ex. J Appraisal at 1; R.1 Complaint.)[9]  In his affidavit, Kozel states that "[o]n June 14, 2005, Accurate Appraisals received an appraisal request from MortgageIT, Inc. located in New York. . . . My appraisals of the Holland Street property were solely done for the lender-client, which was MortgageIT." (R. 66-6 Kozel at 3.)  Together, these documents provide the objective evidence of what was communicated to Kozel and Accurate Appraisals, and make it clear that the June appraisal was commissioned by and done for MortgageIT, and not the Willeckes.

To undermine this, the Willeckes point out that they paid for the appraisal, cite unpersuasively to a number of statements in their depositions that they allege establish that they commissioned the June 2005 appraisal, and note that there was no mortgage application pending with MortgageIT and that no contract for sale had been signed and, therefore, there was no reason for MortgageIT to order an appraisal.[10]  The fact that the cost of the appraisal may have been passed

---

[9]The appraisal specifically states that it is provided for MortgageIT and lists MortgageIT as the "Lender" and Willecke as the "Borrower" throughout the report. (R.60 Ex. J Appraisal at 1; R.1 Complaint.)  The Willeckes claim that Shaun Taupin testified that MortgageIT's designation as the "client" for purposes of this appraisal likely occurred because it was Accurate Appraisals' practice to simply copy prior appraisals prepared by Accurate Appraisals for the property and update the information as necessary.  (Appellant Br. at 28, 39.)  However, Taupin did not testify that there was anything inappropriate or error-conducive about this practice and there is no basis, beyond inappropriate speculation, to find that the designation of MortgageIT as the "client" was an error.

[10]Similarly, any after-the-fact statements by Kozel, where he allegedly likened this situation to hitting Ms. Willecke with a car does not show that the *Willeckes* commissioned the appraisal. Initially, the determination of whether there was a duty and, consequently, negligence (and responsibility) is a legal determination.  Indeed, while it is clear that Kozel made numerous errors in the appraisal, and that the Willeckes used this appraisal with these errors to their detriment, the objective evidence shows that the appraisal limited Kozel's potential liability for those errors to MortgageIT, the lender/client for whom the appraisal was commissioned. *See Moldowan*, 578 F.3d at 374 (noting that a mere scintilla of evidence in support of the non-moving party's position will be insufficient to defeat a motion for summary judgment).

on to the Willeckes, while an important factor, does not create a genuine issue of material fact.[11] In *Seit-Olsen v. Reliance Appraisals, LLC*, 2006 WL 1113936, *6-*7 (Mich. Ct. App. Apr. 27, 2006), an unpublished case involving a third-party claim based on an inaccurate appraisal done for a mortgage company client, the Michigan Court of Appeals found that there was no duty to the plaintiff-borrower in that case, even though the plaintiff paid for the appraisals. The court in *Seit-Olsen* found that the mortgage company (through an employee) contracted with the appraisal company to obtain the appraisal, and that "its cover letter specifically stated that the appraisal was for the mortgage company . . . and that the borrower (plaintiff) was not the client and could not use the report for any purpose." *Id.* at *7. Similarly, here, even if the Willeckes paid for the appraisal, the other objective evidence, which was communicated to Accurate Appraisals, made it clear that the appraisal was requested by and done for MortgageIT. Moreover, the USPAP limiting language indicates that the identity of the client is significant.

There are also a number of statements that the Willeckes claim show that they commissioned the June appraisal. (*See, e.g.*, R. 60 T. Willecke Dep. at 11-13, 18, 71; R. 60 F. Willecke Dep. 42, 66, 133, 136-37.) These statements certainly indicate that the Willeckes subjectively believed that they had hired Kozel and Accurate Appraisals to do the June 2005 appraisal. These statements may even show that the Willeckes wanted Dalberth, who ordered the appraisal, to communicate this information to Accurate Appraisals. However, the fact that the Willeckes intended to commission the appraisal, or even their belief that they had done so through Dalberth, is irrelevant, absent

---

[11]Initially, the Willeckes do not point out when or how they paid for the appraisal. The apprisal request has a Visa credit card number with an expiration date, along with an address and Richard Dalberth's name, which suggests that he originally paid for the appraisal.

communication of this fact to Defendants, because Michigan courts look "to the express words of the parties and their visible acts, not their subjective states of mind." *Kloian*, 733 N.W.2d at 771. Likewise, even if MortgageIT had no reason to commission the appraisal, the Willeckes have provided no evidence that this was communicated to Kozel or Accurate Appraisals. Instead, applying the objective standard, all of the evidence concerning what was actually communicated to Kozel or Accurate Appraisals, including the appraisal itself, shows that MortgageIT was the client, that MortgageIT requested the appraisal, and that the appraisal was completed for MortgageIT.

### 3. The Willeckes' substantive claims

Because of the limiting language in the appraisal, we find that Accurate Appraisals did not owe the Willeckes a duty of care. "The elements of a negligence claim are (1) duty, (2) general standard of care, (3) specific standard of care, (4) cause in fact, (5) legal or proximate cause, and (6) damage." *Bonner v. Chicago Title Ins. Co.*, 487 N.W.2d 807, 810 (Mich. Ct. App. 1992) (citing *Moning v. Alfono*, 254 N.W.2d 759 (Mich. 1977)). "Whether a duty exists is a question of law that is solely for the court to decide." *Harts v. Farmers Ins Exchange*, 597 N.W.2d 47, 50 (Mich. 1999). However, if "there are factual circumstances which give rise to a duty" then "[t]he existence of those facts must be determined by a jury." *Farwell v. Keaton*, 240 N.W.2d 217, 220 (Mich. 1976).

While the Michigan courts have not directly addressed whether there is a duty of care to parties for whom an appraisal was not performed, in Michigan there can be a general duty of care to third parties based on a contract. *Williams v. Polgar*, 215 N.W.2d 149, 157 (Mich. 1974) (holding that a "cause of action arising from breach of the abstracter's contractual duty runs to those persons" that are not party to the contract that the "abstracter could reasonably foresee as relying on the

accuracy of the abstract put into motion"); *see also* Restatement Second of Torts § 552 (noting that

there must be (1) justifiable reliance upon the information by a limited group of persons (2) for

whose benefit and guidance: (A) he intends to supply the information or (B) knows that the recipient

intends to supply it).

However, while under other circumstances, there might be a duty of care stemming from an

appraisal, in this case, we find that the clear language of the appraisal prevents any duty of care to

the Willeckes by the Defendants based on the appraisal. The appraisal specifically states in the

"USPAP Compliance Addendum" that:

> The purpose of the appraisal is to provide an opinion of market value of the subject
> property as defined in this report, on behalf of the appraisal company facilitating the
> assignment of the referenced client as the intended user of the report. The *only*
> function of the appraisal is to assist the client mentioned in this report in evaluating
> the subject property for lending purposes. The use of this appraisal by anyone other
> than the stated intended user, or for any other use than the stated intended use, is
> prohibited.

(R.60-12 Ex. J Appraisal at 13 (emphasis in original); R.1-2 Complaint at 7.) This language is

unambiguous and, concerning the Willeckes (who were not the referenced client), it precludes any

duty of care to them by specifically prohibiting them from using the appraisal. *See Seit-Olsen*, 2006

WL 1113936 at *6-*7.[12] As noted above, there is no genuine dispute that the appraisal that the

---

[12]The appraisal also included language permitting the distribution of a copy of the appraisal
to the Willeckes:

> 10. The appraiser must provide his or her prior written consent before the
> lender/client specified in the appraisal report can distribute the appraisal report
> (including conclusions about the property value, the appraiser's identity and
> professional designations, and references to any professional appraisal organizations
> or the firm with which the appraiser is associated) to anyone other than the borrower;
> the mortgagee or its successor and assignees . . . .

Willeckes received contained this information. Consequently, we find that the Defendants did not

owe the Willeckes a duty of care based on the appraisal.[13]

### 4. Denial of Leave to Amend

The Willeckes argue that the district court abused its discretion in not ruling on their request

to amend their complaint to add a breach of contract claim. In fact, no such request was made; the

---

(R.60-12 Ex. J Appraisal at 6; R.1 Complaint.) However, this language must be read along with the USPAP limiting language, which prevents any duty of care. Thus, while MortgageIT could give the Willeckes a copy of the appraisal, the USPAP limiting language, which accompanied the appraisal, prevented any duty of care from forming based on the appraisal.

[13]In their complaint, the Willeckes alleged both negligent misrepresentation (Count IV) and professional negligence (Count VIII). However, any claim of negligence would have to stem from a duty of care created by the contract between MortgageIT and Accurate Appraisals. Consequently, since there is no duty, the Willeckes claims of negligent misrepresentation and professional negligence fail.

Furthermore, in their complaint, the Willeckes also allege fraud (Count I) and conspiracy to commit fraud (Count VI). In Michigan, the elements of a fraud claim are: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) the defendant knew the representation was false when it was made or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the representation was made with the intent that it should be acted upon by plaintiff; (5) the plaintiff acted in reliance on the misrepresentation; and (6) the misrepresentation caused plaintiff to suffer damages. *See Johnson v. Wausau Ins. Co.*, 769 N.W.2d 755, 759 (Mich. Ct. App. 2009) (citations omitted) (noting that "each of these facts must be proved with a reasonable degree of certainty" and that "[f]raud will not be presumed; it must be proven by 'clear, satisfactory and convincing evidence'"); *see also Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 690-91 (Mich. Ct. App. 1999) (noting that reliance in a fraud claim must be reasonable and affirming summary disposition denying a fraud claim "because plaintiff's reliance on statements 4 and 5 was not reasonable in light of the written contract"). Since here there is no genuine issue of material fact that the USPAP limiting language was a part of the appraisal which MortgageIT commissioned, the representations were not made with the intent that they should be acted upon by plaintiff. Nor was any reliance by the Willeckes reasonable in light of the USPAP limiting language. Furthermore, "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Nieves v. Bell Industries, Inc.*, 517 N.W.2d 235, 238 (Mich. App. Ct. 1994). The district court correctly noted that the plaintiffs, despite having ample means to have discovered the inaccurate information, did not do so. (R. 85 Motion Hearing at 46.) Finally, the Willeckes simply have not produced any evidence of a relationship between the Toths, Accurate Appraisals, and Kozel that would support a claim of conspiracy to commit fraud.

plaintiffs did not file a motion to amend. Instead, the Willeckes requested leave to amend in their written brief opposing a grant of summary judgment. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) ("[A] bare request in an opposition to a motion to dismiss - without any indication of the particular grounds on which amendment is sought, *cf.* FED. R. CIV. P. 7(b) - does not constitute a motion within the contemplation of [FED. R. CIV. P.] 15(a)."). Nor is there any indication in the trial record that they made such a request to the district court. The district court was not required to construe the Willeckes' request in their brief as a motion to amend, and he did not err in not doing so.[14]

## V. CONCLUSION

We find that there is no genuine issue of material fact that the June appraisal was commissioned by and for MortgageIT, and that it contained the USPAP limiting language. Because of this limiting language, we find that the Defendants did not owe a duty of care to the Willeckes. Consequently, we **AFFIRM** the decision of the district court.

---

[14]Indeed, it was readily apparent from the record that there was no evidence of a contract between the Willeckes and Defendants. Similarly, there was also no evidence that the Willeckes were third-party beneficiaries since the Willeckes were not intended beneficiaries of the appraisal agreement. *See* MICH. COMP. LAWS § 600.1405; *Schmalfeldt v. North Pointe Ins. Co.*, 670 N.W.2d 651, 654 (Mich. 2003). Therefore, there was no basis for a claim of breach of contract. The Willeckes also argue that there is a "genuine issue[] of material fact as to whether . . . the purportedly limiting language of the USPAP addendum was a negotiated term of an agreement between the Willeckes and Defendant or whether it was an impermissible unilateral modification that Defendants incorporated into a subsequent version of the appraisal with neither Plaintiffs' knowledge nor assent." (Appellant Br. at 39.) However, as noted above, there was no agreement between Defendants and the Willeckes.